[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————

No. 97-4187
————————————
(District Court No. 96-6063-CR-WJZ)


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HOWARD A. GROSSMAN,

Defendant-Appellant.


————————————

Appeal from the United States District Court
for the Southern District of Florida
————————————

**(December 29, 1997)**

Before COX, DUBINA, and CARNES, Circuit Judges.


PER CURIAM:

Appellant Howard A. Grossman ("Grossman") appeals his conviction for violation of 49 U.S.C. § 46504, which prohibits interfering with the performance of a flight attendant's duties. Grossman was indicted in a two-count indictment returned by a grand jury in the Southern District of Florida charging him with assaulting and intimidating a flight attendant, in violation of 49 U.S.C. § 46504 (Count I), and assault by striking a flight crew member in violation of 18 U.S.C. § 113(a)(4)(Count II). Grossman entered a plea of not guilty and proceeded to trial. A jury convicted Grossman on Count I, but found him not guilty on Count II. The district court sentenced Grossman to five years reporting probation, with the special conditions that he pay a $10,000 fine, pay the cost of prosecution in the amount of $8,761.37, perform 2,000 hours of community service, be placed on community confinement for a period of four months,[1] and pay a $50.00 special assessment. Grossman then perfected this appeal.

## I.  BACKGROUND FACTS

Grossman was a passenger on Carnival Airline, traveling from Kennedy Airport in New York to Fort Lauderdale, Florida. Shortly after takeoff, Grossman fell asleep. While Grossman was sleeping, flight attendant Nancy Harris ("Harris") served breakfast to the passengers. She did not give Grossman a meal. When Grossman later awoke, he asked Harris for a meal, but she informed Grossman that she did not have any meals left.

---

[1]     The sentence was subsequently modified to require four months home confinement with an electric monitor.

2

Grossman asked Harris her name and stated that he was going to sue her. Harris then left Grossman and went to the galley, where she pieced together a breakfast meal. When Harris brought the meal to Grossman, he stated that he did not want it. Harris, however, told Grossman that he would eat the meal and left it with him. Later in the flight, Grossman apologized to Harris and gave her a $20.00 bill.

When the plane was preparing to land in Fort Lauderdale, Florida, flight attendant Amy Krompier ("Krompier") announced to the passengers that it was necessary for them to remain in their seats with their seatbelts fastened. After the plane touched down and was taxiing on the runway, a female passenger, Michelle Kenzer ("Kenzer"), got out of her seat and opened the overhead luggage compartment. Over the public address system, Krompier asked Kenzer to return to her seat. Kenzer, however, did not comply. Senior flight attendant, Peggie Lee Hatten ("Hatten"), left her seat and personally asked Kenzer to be seated. After Kenzer was seated, Hatten returned to her seat.

Shortly thereafter, Grossman ran toward the front of the plane yelling obscenities. Hatten walked down the aisle to meet Grossman, motioning him to return to his seat. Grossman told Hatten that the flight attendants had been rude throughout the flight, and that he was going to sue the airline. Hatten pointed to a vacant seat near the front of the plane and told Grossman to take a seat. Hatten and Grossman were standing face to face, and Grossman pushed Hatten on her right shoulder.

3

Hatten instructed another flight attendant, Tyeron Graham ("Graham") to call the captain. Grossman stated, "Yeah, call the captain. Get the captain." Grossman then pushed Hatten a second time. Grossman continued to curse, but eventually returned to his seat. Pursuant to Hatten's request, a flight engineer called the police.

Deputy Sheriffs Tucciarone ("Tucciarone") and Stark ("Stark") from the Broward County Sheriff's Office met the plane at the gate. After Grossman deplaned, Tucciarone and Stark approached Grossman and asked him for identification. They tried to question Grossman about what had happened on the plane, but Grossman was upset and excited. Tucciarone instructed Grossman to wait on the runway with Stark while he went to find the captain. Grossman, however, followed Tucciarone yelling and cursing. Grossman pushed Tucciarone on the left shoulder, at which time Tucciarone arrested him.

Tucciarone and Stark took Grossman to the squad room at the airport and advised him of his rights. Tucciarone asked Grossman if he understood his rights and if he wished to waive them. Grossman remained silent. While Tucciarone was completing paperwork for the arrest, approximately thirty minutes after Tucciarone had taken Grossman into custody, Grossman apologized to Tucciarone for pushing him.

Tucciarone contacted the Federal Bureau of Investigation ("FBI") and FBI Special Agent Scott Umphlet ("Umphlet") responded. When Umphlet arrived, Tucciarone again advised Grossman of his rights, and he witnessed Grossman sign the form acknowledging that he had been informed of his rights. Tucciarone left Grossman with Umphlet.

4

Grossman told Umphlet that he wanted to tell him what had happened leading up to his arrest. Grossman claimed that he was traveling with Kenzer, and that because of her weight, Kenzar had fallen out of her seat twice while the plane was landing in Fort Lauderdale, Florida.[2] Grossman stated that he was irritated with Hatten's treatment of Kenzar and that he left his seat to speak to the flight captain about Hatten. According to Grossman, Hatten interrupted his progress to the cockpit and he reacted by yelling at her. Grossman first estimated that he was about twenty feet from Hatten when he began yelling, but later revised his estimate to ten to fifteen feet, and finally stated that he was not sure of the distance between them.

## II. STATEMENT OF THE ISSUES

1. Whether the district court erred in denying Grossman's motion for judgment of acquittal pursuant to Rule 29 of the Fed.R.Crim.P. by not requiring the government to prove that Grossman intentionally and willfully acted in violation of 49 U.S.C. § 46504.

2. Whether the district court erred in denying Grossman's motion for judgment of acquittal pursuant to Rule 29 of the Fed.R.Crim.P. by not requiring the government to prove that Grossman interfered with the flight attendant's duties.

---

[2] Kenzer, however, testified that when the plane landed she was not feeling well and went to the overhead compartment to get her jacket.

5

3.  Whether the district court erred in answering the jury's questions during jury deliberations.

4.  Whether the district court erred in allowing the government to offer evidence of Grossman's arrest for battery upon a law enforcement officer after Grossman deplaned.

5.  Whether the district court erred in denying Grossman's motion to suppress his post-arrest statements.

6.  Whether Grossman's conviction violates the First Amendment.

### III.  DISCUSSION

After reviewing the record in this case and having the benefit of oral argument, we conclude that there is no merit to any of the arguments Grossman makes concerning issues two-six and affirm Grossman's conviction as it relates to those issues without further discussion.[3]  Because the first issue presents a question of first impression in this circuit, we feel compelled to address it.

Grossman contends that the district court erred in denying his motion for a judgment of acquittal because the government failed to prove he intentionally and willfully violated 49 U.S.C. § 46504.  This statute provides in part:

> An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, shall be fined under title 18, imprisoned for not more than 20 years, or both.

---

[3]      See 11th Cir. R. 36-1.

49 U.S.C. § 46504. No specific intent element is apparent on the face of the statute. However, Grossman argues that the government was required to prove both that he intended to intimidate a flight attendant and that he intended to interfere with her performance of her duties.[4]

Section 46504 was enacted in 1994, before the conduct in this case occurred, and it replaced 49 U.S.C. § 1472(j), which prohibited assaulting, intimidating, or threatening any crew member or flight attendant "so as to interfere with the performance by such member or attendant of his duties or lessen the ability of such member or attendant to perform his duties." This court reviews de novo a district court's interpretation of a statute. United States v. Grigsby, 111 F.3d 806, 816 (11th Cir. 1997).

There are no appellate court decisions addressing the intent issue as it relates specifically to the language of § 46504, but in their briefs the parties seemed to agree that the issue has not changed since § 46504 replaced § 1472(j). There is no indication of any congressional intent to change the meaning of the statutory language as it relates to this issue. In any event, the two circuits that have addressed specific intent arguments relating to § 1472(j) both held that it was a general intent crime. See United States v. Meeker, 527 F.2d 12, 14 (9th Cir. 1972); United States v. Compton, 5 F.3d 358, 360 (9th Cir. 1993); United States v. Hicks, 980 F.2d 963, 974 (5th Cir. 1992).

_____

[4] Grossman does not make an intent argument related to the assault element of 49 U.S.C. § 46504 because, he contends, his acquittal on Count II (which charged assault in violation of 18 U.S.C. § 113) left intimidation as the only possible ground for the jury's finding that he violated § 46504.

The Ninth Circuit in <u>Meeker</u> reasoned that, if Congress had intended to legislate a specific intent crime, the statute would have said "with the intent to" interfere rather than "so as to" interfere. 527 F.2d at 14. The <u>Meeker</u> court also explained that construing the statute as not requiring specific intent was in harmony with the compelling statutory purpose of safeguarding flight personnel against acts interfering with the performance of their duties. <u>Id.</u> According to <u>Meeker</u>, Congress wanted to prohibit the interference, not the intent to interfere. <u>Id.</u>

The Fifth Circuit essentially followed this same reasoning in <u>Hicks,</u> 980 F.2d at 974, where it held that there was no requirement that the defendant acted with specific intent to interfere.

Based on the plain language of the statute and the decisions of our sister circuits, we hold that § 46504 does not require any showing of specific intent; instead, it defines a general intent crime.

For the foregoing reasons, we affirm Grossman's conviction.

AFFIRMED.