[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 02-12871
_____

D.C. Docket No. 01-00670-CR-PAS

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 04 2003
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASON ETTINGER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 4, 2003)

Before BIRCH, CARNES and BRUNETTI*, Circuit Judges.

_____
*Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

BRUNETTI, Circuit Judge:

Jason Ettinger appeals his conviction for assaulting, resisting, or impeding a federal officer and inflicting bodily injury, in violation of 18 U.S.C. § 111(a) and (b). Ettinger argues that the district court erred in (1) ruling that § 111 is a general intent crime, (2) by allowing the government to introduce testimony of a prior consistent statement of a witness pursuant to Fed. R. Evid. 801(d)(1)(B), and (3) in denying his motion for a mistrial. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

## I.

## BACKGROUND

While being detained at a pretrial detention center in Miami, Florida, Ettinger was involved in an altercation with a Federal Correctional Officer. As Officers Stephen Barnes and Donald Ferguson escorted Ettinger from the Special Housing Unit ("SHU") to the visiting room, Ettinger punched Officer Reginald Turner in the back of his head. Thereafter, the government charged Ettinger with assaulting, resisting, or impeding a federal officer and inflicting bodily injury, in violation of 18 U.S.C. § 111(a) and (b). He pleaded not guilty and a jury trial followed.

Prior to trial, Ettinger filed a notice of his intent to raise a "diminished

2

capacity" defense and to offer expert testimony at trial regarding his mental condition. The district court first ruled that an offense charged under § 111 is a "specific intent" crime and therefore, Ettinger had a right to introduce psychological evidence to negate the *mens rea* element of the offense. After hearing the government's motion for reconsideration, the district court ruled that § 111 is a "general intent" statute. Accordingly, Ettinger was denied the use of a diminished capacity defense.

During trial, Officer Barnes testified that after Ettinger struck Officer Turner, Ettinger stated that he had told Turner he was "going to get him." On cross-examination, Barnes admitted that he had not included Ettinger's statement in his official report made on the day of the incident. Ettinger's counsel asked Barnes if he had read any other officers' reports and stated his concern regarding where Barnes's statement suddenly came from. Barnes stated that he had spoke with other correction officers regarding the incident immediately after it occurred, but that he had not read any other officers' reports regarding the incident. Following a sidebar, the district court allowed the government to introduce an FBI report of Barnes's statement to an FBI agent. The government used this statement to show that Barnes had previously mentioned Ettinger's statement that he was going to get Turner, and to dispute Ettinger's argument that Barnes had fabricated

the statement.  The district court allowed introduction of the statement pursuant to Fed. R. Evid. 801(d)(1)(B).

Later, during a brief recess when the jury was not present, Ettinger physically attacked one of the deputy marshals in the courtroom.  After the altercation, the court and the parties discussed the incident and how the court could regain order.  The district court then recessed the trial in order to allow Ettinger time to calm down.  After recess, outside the presence of the jury, defense counsel moved for a mistrial on the basis of a conflict of interest.  Defense counsel contended that he was involved in the altercation between Ettinger and the deputy marshal.  Further, defense counsel argued that the attorney-client relationship was compromised because it was likely that he would be called to testify regarding Ettinger's demeanor following the incident, he would likely be called as an adverse witness in a future criminal proceeding against Ettinger, he was inhibited from presenting an argument to the jury regarding Ettinger's non-violent temperament, he may be called as a defendant by Ettinger in a subsequent civil suit, and statements that he made to marshals during the incident could be construed by Ettinger as lacking trust.

The district court determined that the conflict of interest was merely a potential conflict that would occur at a time when defense counsel would no

4

longer be representing Ettinger. Nonetheless, the court ruled that if, during the course of the trial, an actual conflict arose that prohibited defense counsel from zealously representing Ettinger, it would take that into account after the trial and act accordingly. **[R4 at 41-42]** The district court proceeded with the trial, and the jury found Ettinger guilty of assaulting a federal officer.

After the trial, defense counsel filed a motion to withdraw as counsel because the government advised him that it was going to pursue a federal prosecution based on the incident between Ettinger and the deputy marshal during the trial. He contended that it was inevitable that he would be called as a witness in the new criminal prosecution against Ettinger. The district court granted the motion to withdraw and appointed new counsel to represent Ettinger.

II.

DISCUSSION

A.    18 U.S.C. § 111

The statute in question in this case, 18 U.S.C. § 111, provides as follows:

(a)    **In general**. – Whoever –

       (1)    forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of

5

official duties; or

(2)     forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.

(b)     **Enhanced penalty**. – Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than ten years or both.

Persons designated in § 1114 are officers or employees of the United States or of any agency in any branch of the United States Government.

We review the district court's interpretation of 18 U.S.C. § 111, de novo. See United States v. Grossman, 131 F.3d 1449, 1451 (11th Cir. 1997). Ettinger argues that the district court erred in ruling that an offense charged under 18 U.S.C. § 111(a) and (b) is a general intent crime that precluded his claimed defense of diminished capacity. Ettinger contends that § 111 is a "specific intent" statute and that he can raise a "diminished capacity defense."

A defendant can attempt to introduce psychiatric evidence to negate specific

intent when such is an element of the offense charged.  See United States v. Cameron, 907 F.2d 1051, 1063 (11th Cir. 1990).  Admitting psychiatric evidence to negate *mens rea* does not constitute a defense, but only negates an element of the offense.  Id. at 1065.

"Psychological evidence that aids the trier in determining the defendant's specific state of mind with regard to the actions she took at the time the charged offense was committed, by contrast, is not an affirmative defense but is evidence that goes specifically to whether the prosecution has carried its burden of proving each essential element of the crime – at least when specific intent is at issue."  Id. at 1063.

Cameron is a perfect example of a "specific intent" crime and the use of a "diminished capacity defense" to negate the specific intent element of the crime. Cameron was charged with participating in a conspiracy to distribute "crack" cocaine in violation of 21 U.S.C. § 841(a)(1).  Section 841(a)(1) makes it unlawful for a person knowingly and intentionally to possess with intent to distribute a controlled substance.  The statute on its face sets forth the specific intent, "with intent to distribute."  We held that the district court did not abuse its discretion in prohibiting Cameron from presenting "unarticulated psychiatric evidence" to demonstrate that she did not intend to distribute "crack" cocaine.  Id. 1067-1068.

We found that Cameron failed to demonstrate how her psychiatric evidence would negate intent and not merely present a dangerously confusing theory of defense more akin to justification and excuse than a "legally acceptable theory of lack of *mens rea*." Id. 1067.

Cameron's interpretation of § 841(a)(1) clearly shows why Ettinger's interpretation of § 111 is erroneous. On its face, the statute Cameron was charged under details the specific intent requirement to be satisfied for conviction. Section 111, under which Ettinger is charged, does not contain specific intent language.

In United States v. Williams, 197 F.3d 1091 (11th Cir. 1999), Williams was charged under 18 U.S.C. § 2244(a)(1) and convicted of abusive sexual conduct with a child. We found that § 2244(a)(1) encompasses all of the elements of simple assault under 18 U.S.C. § 113(a)(5). In discussing whether the district court erred in not giving a lesser included offense instruction on simple assault under § 113 we held

> Section 113 identifies seven kinds of assault. See 18 U.S.C. § 113(a). For some of these offenses, the statute specifically sets forth a specific intent requirement. See 18 U.S.C. § 113(a)(1) (assault with intent to commit murder); [and] 18 U.S.C. § 113(a)(3) (assault with a dangerous weapon and intent to do bodily harm) [emphasis added]."

Id. 1096.

We distinguished the subsections of § 113 identifying assault by striking,

beating or wounding, assault resulting in serious bodily injury, and simple assault as containing no language setting out a "specific intent" requirement. Id. 1096. We further noted that other courts have recognized this omission and concluded that "no specific intent element exists for assault by striking, beating or wounding, United States v. Martin, 536 F.2d 535, 535-56 (2nd Cir. 1976), and assault resulting in serious bodily injury. United States v. Juvenile Male, 930 F.2d 727, 728-29 (9th Cir. 1991)." Id. 1096. The specific intent sections of § 113 contain the words intend to and the sections that do not have a "specific intent" element do not contain these explicit "intent" words.

Similarly, 18 U.S.C. § 111 does not contain explicit "intend to" wording on its face and is a "general intent" statute. See Grossman, 113 F.3d at 1451-52.

(1)    United States v. Feola

The Supreme Court has held that § 111 does not embody an unexpressed requirement that an assailant be aware that his victim is a federal officer. United States v. Feola, 420 U.S. 671, 684, 95 S. Ct. 1255, 43 L. Ed. 2d 541 (1974). Feola teaches that the defendant's state of knowledge only requires an intent to assault, not an intent to assault a federal officer. Id. However, this does not imply that

the defendant's state of knowledge is never a relevant consideration

9

under § 111. The statute does require a criminal intent, and there may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of *mens rea*. For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance and an honest mistake of fact would not be consistent with criminal intent.

Id. 686.

In order to incur criminal liability under § 111, Ettinger must "entertain merely the criminal intent to do the acts" specified in § 111, to forcibly assault, resist, oppose, impede, intimidate or interfere with a federal officer "while engaged in or on account of the performance of official duties." Id. See also 18 U.S.C. § 111(a)(1).

A federal grand jury returned a one count indictment charging that Ettinger "did knowingly and wilfully, forcibly assault, resist, oppose, impede, intimidate and interfere with a federal correctional officer, while the officer was engaged in the performance of his official duties and did thereby inflict bodily injury upon him, in violation of 18 U.S.C. § 111(a) and (b)" [R1:1]. The district court did not err when it ruled that the indictment charging Ettinger under 18 U.S.C. § 111(a) and (b) was a "general intent" crime which precluded Ettinger from raising a "diminished capacity" defense. The evidence in this case clearly shows that

10

Ettinger intended to and did assault federal Officer Turner. This is a clear application of Feola. Ettinger, a federal detainee, was being lawfully moved by federal officers in a prison shakedown room when, without provocation, he struck Officer Turner. In other words, Ettinger's actions exemplified the "criminal intent" § 111 requires pursuant to Feola. See Feola, 420 U.S. 671 at 686.

The district court record of proceedings concerning Ettinger's Notice of Diminished Capacity Defense and the Government's Motion For Reconsideration supports the district court's ruling, and shows the following uncontested circumstances. Ettinger had been arrested and charged with importation and possession of cocaine with intent to distribute and he was in pretrial detention on these charges. Stephen Barnes, a correction officer at the Federal Detention Center in Miami, was assigned to work at the "visiting room." [R2:35-36, 39] Barnes and two other staff members escorted Ettinger and another inmate from the SHU to the visiting room. Both Ettinger and the other inmate were handcuffed. [R2:40-41, 43] Prior to entering the visiting room, one must pass through a holding area, then a "shakedown" area. [R2:44-45, 48]

Officer Barnes and Ettinger were the first to enter the shakedown room. [R2:46, 51] Officer Turner entered the shakedown room next, neither speaking to nor touching Ettinger. [R2:51, 80-81, 84] Officer Ferguson, Officer Williams and

11

another inmate then entered the room. [R2:50-51, 84] After Officer Williams left the room, Officer Turner stood facing the exit door and was about to leave to speak with Officer Williams when Ettinger struck him on the back of his head. [R2:84-85, 96; R3:22-23] As soon as Officer Barnes had removed Ettinger's hand-cuffs, Ettinger spun around and ran toward Officer Turner, who was standing facing the door, and struck Turner. [R2:51-52, 85-86] The blow caused Turner's head to strike the door which he was standing next to. [R2:52-53; R3:25-28] As a result of the attack Turner had a headache and some swelling. Turner's doctor testified that he had found a lesion on the back of Turner's head, some swelling in the forehead area and that those were consistent with blunt trauma to the head. [R2:52-3; R3:25-28]

Officer Ferguson ran over to Ettinger, grabbed him, and took him down to the ground. [R2:55, 86] Ettinger stated "I told you I was going to get you." [R2:55, 67, 87] Both Officers Barnes and Ferguson testified that Ettinger had made this statement about "getting" Turner. [R2:55, 86-87] However, Barnes did not include Ettinger's remarks in his own report made after the attack. [R2:70-72] Barnes did report the statement to FBI Agent Nau one week after the attack. [R2:80]

Ettinger contended in his district court Response To The Government's

12

Motion For Reconsideration that this Court has already determined that § 111 is a specific intent statute. Ettinger cited our decision in United States v. Gonzalez, 122 F.3d 1383 (11th Cir. 1997), to support his proposition. This contention is incorrect. Gonzalez is not a case which determines whether § 111 is a general or specific intent crime. It merely applies a Feola "general intent" analysis to determine whether the circumstances of the case, as viewed by the evidence presented, supports the conviction for the crime charged, or whether there were justifiable circumstances which would show that the defendant's actions were not consistent with criminal intent.

Despite Gonzalez's application of Feola's "general intent" analysis, Ettinger argues that Gonzalez held that the attempted or threatened injury under § 111 must be "an intentional act willfully done without legal excuse," and therefore that language indicates § 111 is a specific intent crime. Id. at 1386. This "targeted" language from Gonzalez does not imply that a defendant need have any heightened level of intent to violate § 111. In fact, even though Gonzalez was decided after Feola, the "targeted" language was taken by the Gonzalez court from Burke v. United States, 400 F.2d 866, 867 (5th Cir. 1968), a case decided before, and without the benefit of the Supreme Court's analysis of § 111 in Feola. We did, however, apply a general intent analysis when we affirmed Gonzalez's

13

criminal liability under § 111.  The evidence established that he merely had the general criminal intent to forcibly assault three U.S. Marshals by use of a Blazer automobile.  See Feola, 420 U.S. 686.  The circumstances presented in Gonzalez did not indicate any justified resistance or mistake of fact that may negate the criminal intent required by § 111, and there was no evidence presented that supported a contention that Gonzalez did not act in a knowing and willful manner.

Gonzalez argued that there was insufficient evidence to establish the charged offenses.  Although the grand jury indicted Gonzalez for "forcibly assaulting three United States Marshals by use of a dangerous weapon (the Blazer)," he contended that the evidence did not establish that he intentionally directed force at the three federal officers he allegedly tried to assault with his Blazer.  Instead, Gonzalez argued that the evidence was consistent with his contention (made at trial) that he was "simply driving, head down, attempting to flee."  Gonzalez, 122 F.3d at 1386.

The facts and circumstances of Gonzalez did not support Gonzalez's argument nor do they support Ettinger's reading of Gonzalez.  A federal warrant was issued for Gonzalez's arrest.  Id. at 1384.  Federal marshals surveilled a motel and the room therein where they believed Gonzalez was staying.  Id. at 1385.  Marshals blockaded all entrances to the motel which included a parking garage

14

and lot.  Id.  The officers observed a Blazer automobile leaving the parking spot in the garage assigned to the suspect's room and the Blazer proceeded through the parking lot until his path was blocked by a city police car and a U.S. Marshal's vehicle.  Id.  The Blazer stopped and the agents yelled "[p]olice.  Everyone out of the vehicle."  Id.

At this point the driver of the Blazer tried to flee the parking lot "seemingly without regard for persons and vehicles in its path."  Id.  The agents at the scene began firing at the Blazer and the Blazer nearly hit two different agents.  Id.  The Blazer momentarily paused at a chain link fence behind which sat two U.S. Marshals' vehicles blocking the Blazer's path.  Id.  The Blazer's occupants were again instructed to stop and get out of the vehicle.  Instead, the Blazer repeatedly rammed the fence, finally breaking through and hitting the deputy marshals' car.  Id.  The Blazer eventually ran aground and the occupants were apprehended and arrested.  Id.

The three U.S. Marshals that Gonzalez allegedly assaulted with his vehicle each testified in detail about the circumstances that led them to think that the Blazer's driver intentionally tried to hit them in his attempt to flee the parking garage.  We held that based on this testimony a reasonable jury could easily conclude that Gonzalez's act of driving the Blazer at the marshals was intentional,

15

and on these circumstances the evidence was sufficient to support this conviction. Id. at 1386. That is, that Gonzalez possessed the "general intent" to hit the officers. Specifically, his intent was "knowing and willful," and his actions were not the result of an honest mistake of fact or justified resistance that would not be consistent with criminal intent. Feola, 420 U.S. at 686. Neither Gonzalez nor Ettinger were justified or mistaken with regard to their respective assaults on the federal officers and their actions were each consistent with a "general intent" to assault, as mandated by § 111.

We have held that 18 U.S.C. § 115, a similar federal assault statute, is a general intent rather than a specific intent crime. United States v. Berki, 936 F.2d 529, 532 (11th Cir.), cert. denied, 503 U.S. 988 (1992). (§ 115 involves threatening a federal judge and is not a specific intent crime because the statute did not require the defendant to know that he was threatening a federal judge). We have also cited Feola in determining that criminal liability under § 111 was not based on whether the defendant knew that his victim was a federal officer. United States v. Alvarez, 755 F.2d 830, 842 (11th Cir. 1985), cert. denied, 475 U.S. 905 (1985). (We adopted Feola's reasoning that the statute requires only an intent to assault and not a specific intent to assault a federal officer). Further, other circuits have found that 18 U.S.C. § 111 is a general intent crime. United States v. Kimes,

16

246 F.3d 800, 809 (6th Cir.), cert. denied, 122 S.Ct. 823 (2002).  (§ 111 is a general intent crime and the defense of diminished capacity does not apply).  See also, United States v. Ricketts, 146 F.3d 492, 496 (7th Cir. 1998); United States v. Kleinbart, 27 F.3d 586, 592 (D.C. Cir.), cert. denied, 513 U.S. 978 (1994); United States v. Oakie, 12 F.3d 1436, 1443 (8th Cir. 1993); United States v. Jim, 865 F.2d 211, 213 (9th Cir.), cert. denied, 493 U.S. 827 (1989).

Ettinger alleges that the following circuits have found § 111 to be a specific intent statute.  In United States v. Taylor, 680 F.2d 378, 381 (5th Cir. 1982), the Fifth Circuit held that the district court had not erred by instructing the jury that defendant must have had a "willful intent" when he hit a postal worker.  In United States v. Simmonds, 931 F.2d 685, 687 (10th Cir. 1991), the court held that the district court recognized that § 111 was a "specific intent" statute, however, it defined the intent required to commit a violation of § 111 in "general intent" terms.  That is, that the defendant acted "knowingly and willfully."  Id.  In United States v. Caruana, 652 F.2d 220, 223 (1st Cir. 1981), the court determined that there was sufficient evidence admitted at trial to find that the defendant willfully released dogs on federal marshals with the intent to frighten them.

These cases do not specifically deal with whether § 111 is a general or specific intent crime in order to determine whether diminished capacity can be

17

argued to negate the *mens rea* requirement of the statute. The rationale of these cases is not germane to our case and they are not binding on us. We agree with the reasoning of the circuits that have held that § 111 is a "general intent" statute and that a "diminished capacity defense" is not available to a charge under this section.

(2)    Eleventh Circuit Pattern Jury Instruction 1.2

Next, Ettinger contends that the language of Eleventh Circuit Pattern Jury Instruction Criminal 1.2 ("Pattern Instruction 1.2") implies that § 111 is a specific intent crime because it states that "the Defendant acted knowingly and wilfully." Our pattern instructions are not precedent and cannot solely foreclose the construction of the necessary elements of a crime as stated in the statute. Moreover, the language of Pattern Instruction 1.2 is consistent with our holding. The terms "knowingly and wilfully" do not define "specific intent." Where no specific intent element is apparent on the face of the statute, the crime is one of general intent. See Grossman, 131 F.3d 1451-52. The language of § 111 only requires the knowing commission of the act.

Furthermore, "[t]he word 'willfully' means that a person or entity charged as a defendant knowingly and intentionally committed acts which constitute the offense charged and that such acts were not committed accidentally or by some mistake." United States v. Phillips, 19 F.3d 1565, 1577 (11th Cir. 1994). It is

18

clear from the facts before us that Ettinger willfully hit Officer Turner in the back of his head. Ettinger's words after the act and the act itself are a clear indication of a deliberate intentional act and not an honest mistake or accident. Therefore, Ettinger's conduct met the general intent requirement of § 111.

In his argument to this court on appeal, Ettinger does not brief a "Gonzalez" argument (as he did in the district court) to support his "diminished capacity defense" but, instead, contends in his appellate brief that "the trial court erred in its decision as not only does the language of the statute dictate that 18 U.S.C. § 111(a)(1) is a specific intent crime but also that Pattern Instruction 1.2 of this Circuit makes it clear that specific intent is an element of the offense." He further supports his argument by pointing to another general jury instruction given by the district court which defined the word "willfully" as the term is used in the indictment or in the instructions.

Ettinger's appellate argument then states his disagreement with the reasoning of Kimes, supra, and claims there is a circuit split as to whether 18 U.S.C. § 111(a)(1) is a general intent statute, citing Simmonds, Taylor and Caruana, supra. He finally concludes stating that "the apparent circuit split is irrelevant . . . given Pattern Jury Instruction 1.2. In this Circuit there appears to be no dispute that 18 U.S.C. § 111(a)(1) is viewed as a specific intent crime."

19

[Appellant's Brief at 14.]

Ettinger's argument is incomplete and erroneous. To begin with, the portion of the jury instructions given in this case by the district court with reference to the government's burden of proof necessary to convict under 18 U.S.C. § 111(a)(1) are in substance the same as Pattern Instruction 1.2. But this is not a case questioning the correctness of the instruction as given to the jury, rather Ettinger argues that the Eleventh Circuit has, by adopting Pattern Instruction 1.2, viewed 18 U.S.C. § 111(a)(1) as a specific intent crime. So we must look not only to the instruction as given by the district court (which is consistent with Pattern Instruction 1.2) but also to Pattern Instruction 1.2. The pertinent part of Eleventh Circuit Pattern Jury Instruction 1.2 (1997) provides as follows (each paragraph has been designated with a letter in brackets for convenience of discussion):

[A.] The Defendant can be found guilty of the offense of assaulting a Federal officer [with a deadly weapon] [inflicting bodily injury] only if all of the following facts are proved beyond a reasonable doubt:

[B.] First: That the Defendant forcibly assaulted the person described in the indictment;

[C.] Second: That the person assaulted was a Federal officer, as described above, then engaged in the performance of an official duty, as charged;

[D.] Third: That the Defendant acted knowingly and willfully; and

20

[E.] <u>Fourth</u>: That in so acting the Defendant [used a deadly or dangerous weapon] [inflicted bodily injury].

[F.] The term "forcible assault" means any willful attempt or threat to inflict injury upon someone else, when coupled with an apparent present ability to do so, and includes any intentional display of force that would give a reasonable person cause to expect immediate bodily harm even though the threat or attempt is not actually carried out and the victim is not actually injured.

[G.] It is not necessary to show that the Defendant knew that the person being forcibly assaulted was, at that time, a Federal officer carrying out an official duty so long as it is established beyond a reasonable doubt that the victim was, in fact, a Federal officer acting in the course of performing an official duty and that the Defendant willfully committed a forcible assault upon the officer.

[H.] On the other hand, the Defendant would not be guilty of a willful assault if the evidence leaves you with a reasonable doubt concerning whether the Defendant knew the victim to be a Federal officer and that the Defendant only acted because of a reasonable, good faith belief that self defense was needed to protect against an assault by a private citizen.

The district court's added general instruction defining "willfully" as used in the indictment and the instructions, and cited by Ettinger in support of his argument, provided:

The word willfully, as that term is used in the Indictment or in these Instructions, means that the act was committed voluntarily and purposefully, with a specific intent to do something the law forbids; that is, with bad purpose either to disobey or disregard the law.

Court's Instructions To The Jury, page 10.

21

Reviewing these instructions it is clear that, as stated in our discussion above, the mere use of "willfully" in the instructions does not indicate that this Circuit views 18 U.S.C. § 111 as a general intent statute. More to the point, it is brutally clear that when this Circuit adopted Pattern Instruction 1.2 it was carefully following the instruction given by Feola. Critical holdings of Feola are incorporated in Pattern Instruction 1.2 at paragraphs [G] and [H] set forth above.

Paragraph [G] sets out the Feola holding that § 111 does not require that an assailant be aware that his victim be a federal officer, and that all that is required is that the assailant intended to commit an assault. Feola, 420 U.S. at 684. Paragraph [H] incorporates the Feola holding that while the defendant's state of mind is a relevant consideration under § 111, there may be circumstances in which ignorance of the official status of the person assaulted negates the very existence of *mens rea*. Id. at 686.

The district court's general instruction defining "willfully," as used in the indictment and instructions, is also consistent with Feola. Id. 686. All Feola requires is that the assailant intend to commit an assault. Id. 684. The use of the term "specific intent" in the general instruction is unnecessary and wrong. As set out in this opinion, there is no need under § 111 to show specific intent to commit an assault, in fact, the assault is a breach of the law. The only intent and state of

22

knowledge necessary is to commit the assault.

Accordingly, we affirm the district court and hold that 18 U.S.C. § 111 is a "general" intent statute and that a "diminished capacity defense" is not available to an offense charged under § 111.

B.      Prior Consistent Statement

"A district court is granted broad discretion in determining the admissibility of a prior consistent statement under Fed. R. Evid. 801(d)(1)(B) and will not be reversed absent a clear showing of an abuse of discretion." United States v. Prieto, 232 F.3d 816, 819 (11th Cir. 2000), cert. denied, 122 S.Ct. 345 (2001).

Ettinger argues that the district court erred in allowing the introduction of Barnes's testimony about the statement he gave the FBI agent. This argument fails. The plain language of Rule 801(d)(1)(B) states:

> (d) Statements which are not hearsay. A statement is not hearsay if -
>
> (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . .
>
> (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive.

Fed. R. Evid. 801(d)(1)(B). Barnes's statement contained in the FBI report was admissible as a prior consistent statement. Barnes testified at trial and was

23

therefore subject to cross examination.  The statement was consistent with Barnes's testimony because both in his testimony and in the FBI report, he indicated that shortly after the altercation, Ettinger stated something regarding telling Turner he was "going to get him."  Furthermore, during cross-examination, Ettinger implied that Barnes had fabricated hearing such a statement.  Barnes's statement made to the FBI agent was therefore admitted properly to rebut an implied charge of recent fabrication, pursuant to Fed. R. Evid. 801(d)(1)(B).

Thus, the district court did not abuse its discretion by admitting Barnes's statement contained in the FBI report.

C.    Motion For Mistrial

This Court reviews the district court's denial of a motion for mistrial for an abuse of discretion.  United States v. Diaz, 248 F.3d 1065, 1101 (11th Cir. 2001).  Typically, a defendant is entitled to a grant of mistrial only upon a showing of substantial prejudice.  United States v. Chastain, 198 F.3d 1338, 1352 (11th Cir. 1999), cert. denied, 532 U.S. 996 (2001).  However, a showing a prejudice is not required where the defendant claims that a mistrial was mandated because of an actual conflict of interest.  United States v. Martinez, 630 F.2d 361, 362 (5th Cir. 1980), cert. denied, 450 U.S. 922 (1981).

Ettinger argues that the district court erred in denying his motion for

24

mistrial when the court granted a post-trial motion for his attorney to withdraw based on the same grounds. This contention will succeed only if there was an actual conflict at the time the court initially denied Ettinger's motion. In order to show an actual conflict, Ettinger must "make a factual showing of inconsistent interests" or point to "specific instances in the record" to suggest that an actual impairment of his interests exists. United States v. Novaton, 271 F.3d 968, 1010-11 (11th Cir. 2001), cert. denied, 122 S.Ct. 2345 (2002). Ettinger fails to show that an actual conflict of interest existed. In actuality, Ettinger concedes that only a potential conflict existed because of the likelihood that defense counsel would be called to testify against Ettinger in a future prosecution. The district court specifically stated that if an actual conflict arose that prohibited the defense from zealously representing Ettinger, it would take that into account after the trial and act accordingly. Because no actual conflict existed, the district court did not abuse its discretion by refusing to grant Ettinger's motion.

## III.

## CONCLUSION

We hold that 18 U.S.C. § 111 is a general intent statute and that the district court did not err in denying Ettinger a diminished capacity defense. The district court did not err in admitting Barnes' prior consistent statement and in denying

25

Ettinger's motion for a mistrial.  We affirm.

AFFIRMED.