[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 02, 2007
THOMAS K. KAHN
CLERK

----------------------------------------

No. 06-15984
Non-Argument Calendar

----------------------------------------

D.C. Docket No. 06-00116-CR-J-32-HTS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE LANDICHO TRINIDAD, JR.,

Defendant-Appellant.

----------------------------------------
Appeal from the United States District Court
for the Middle District of Florida
----------------------------------------

**(November 2, 2007)**

Before EDMONDSON, Chief Judge, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Jose Trinidad, Jr. ("Defendant"), appeals his convictions for (1) assault on a

federal law enforcement officer with a deadly or dangerous weapon under 18

U.S.C. § 111; and (2) discharge of a firearm in furtherance of a crime of violence under 18 U.S.C. § 924 (c)(1)(A). No reversible error has been shown; we affirm.

In 2006, Special Agent Neil Norrman ("Norrman"), an officer of the United States Department of Immigration and Customs Enforcement ("ICE"), twice visited Defendant's home to investigate possible falsifications in Defendant's petition to bring his fiancee to this country from the Phillipines. At trial, Norrman testified that, during the first visit, Defendant invited Norrman into the home after he showed his credentials and that Norrman interviewed Defendant about the immigration petition. But Defendant testified at trial that, during the first visit, Norrman quickly flashed his credentials, kicked in the front door of Defendant's home, and threatened to arrest Defendant. Defendant also testified that, at the time, he believed Norrman was an impostor posing as an immigration agent.

The events giving rise to Defendant's conviction occurred during Norrman's second visit to the residence. Norrman testified that a child answered the door and retrieved Defendant's fiancee. Norrman questioned the fiancee briefly and then asked to speak with Defendant, who was sleeping at the time. When Defendant came to the door, Norrman again showed his credentials and asked if Defendant remembered him. Defendant then pulled a gun from under his bathrobe, pointed the gun at Norrman's head, and ordered Normann to sit down.

2

When Norrman said he would leave, Defendant fired one shot toward Norrman, which passed over Norrman's left shoulder. Norrman immediately sat down and put his hands on the ground. Defendant then tapped Norrman's head with the gun and ordered him to lie down. Meanwhile, Defendant's fiancee called 911, and authorities were called to the scene. While waiting for the police to arrive, Defendant said to Norrman several times, "Stay still, do you want to die[?]"

Defendant's version of the events during Norrman's second visit differed slightly from Norrman's account. Defendant testified that he continued to believe that Norrman was an impostor posing as an immigration agent. Defendant also testified that he never pointed the gun at or tried to attack Norrman. But Defendant did admit that he fired a shot into the air "away from" Norrman.

The jury returned a guilty verdict on both counts of the indictment: (1) assault on a federal law enforcement officer with a deadly weapon and (2) discharge of a firearm in furtherance of a crime of violence. The district court then sentenced Defendant to 144 months' imprisonment. This appeal ensued.

On appeal, Defendant argues that the evidence was insufficient to support his conviction for assaulting a federal officer under 18 U.S.C. § 111. He suggests that the evidence at trial left reasonable doubt that he possessed the requisite criminal intent because he was unaware that Norrman was a federal officer.

Defendant contends he was acting in self defense to protect himself and his family from someone he believed to be impersonating a federal officer. Last, he argues that the conviction for discharge of a firearm in furtherance of a crime of violence must be reversed because insufficient evidence supports the conviction for the crime of violence.

We review de novo the sufficiency of the evidence supporting a conviction, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. United States v. Taylor, 480 F.3d 1025, 1026 (11th Cir. 2007). After reviewing the record, we conclude that sufficient evidence supported Defendant's convictions.

In this case, a reasonable jury could have concluded that Defendant used a deadly or dangerous weapon to assault forcibly, resist, impede, intimidate, or interfere with a federal official "while engaged in or on account of the performance of official duties." 18 U.S.C. § 111(a)(1) and (b). This Court has classified section 111 as a "general intent statute," meaning that it "does not embody an unexpressed requirement that an assailant be aware that his victim is a federal officer." United States v. Ettinger, 344 F.3d 1149, 1154 (11th Cir. 2003) (citing United States v. Feola, 95 S. Ct. 1255 (1974)). In other words, "the

defendant's state of <u>knowledge</u> only requires an intent to assault, not an <u>intent to assault a federal officer</u>." <u>Id.</u>

The Supreme Court has said that "ignorance of the official status of the person assaulted or resisted" may negate criminal intent in certain circumstances, such as "where an officer fails to identify himself or his purpose," and the officer's conduct "might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property." <u>United States v. Feola</u>, 95 S. Ct. 1255, 1264 (1974). This case does not present such a negating circumstance. A reasonable jury could have believed Norrman's testimony that he identified himself and his purpose on both visits and that he never used or threatened to use unlawful force.

Also, the jury was entitled to disbelieve Defendant's testimony at trial, which differed somewhat from Norrman's version of the facts. Indeed, "when a defendant chooses to testify, he runs the risk that if disbelieved the jury might conclude the opposite of his testimony is true." <u>United States v. Brown</u>, 53 F.3d 312, 314 (11th Cir. 1995) (citation and quotation marks omitted). Because ample

evidence supports the finding that Defendant assaulted Norrman with a deadly weapon, Defendant's convictions must be affirmed.[1]

AFFIRMED.

---

[1]Because we affirm Defendant's conviction for assault, and Defendant does not dispute that he fired a shot during the altercation with Norrman, we also affirm Defendant's conviction for discharging a firearm in furtherance of a crime of violence under 18 U.S.C. § 924 (c)(1)(A).