[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12289
Non-Argument Calendar

_____

D.C. Docket No. 2:11-cr-00108-JES-SPC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL JAMES HARRELL,
MATTHEW ROLLINS,
a.k.a. Michael Rollins,
MAURICE ANDRE COLBERT,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(December 18, 2015)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Maurice Colbert, Matthew Rollins, and Michael Harrell appeal their

convictions for conspiracy to commit armed bank robbery, in violation of 18

U.S.C. §§ 2113(a), (d), and 371; conspiracy to use and carry a firearm in furtherance of a bank robbery, in violation of 18 U.S.C. §§ 2113(a), (d), and 924(o); armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d); using, carrying, and possessing a firearm in furtherance of a bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii) and (c)(1)(C)(i); and attempted bank robbery, in violation of 18 U.S.C. § 2113(a).  Colbert also appeals his 20-year prison sentence. On appeal, Colbert argues that: (1) the district court erred by failing to suppress the wiretap evidence; (2) 18 U.S.C. § 924(c)(1) violates his rights under the Equal Protection Clause and the Eighth Amendment; (3) the district court erred by sentencing him based on relevant conduct not charged or found by the jury; and (4) his 20-year sentence is substantively unreasonable.  Rollins argues that: (1) the district court abused its discretion by denying his motion for severance; and (2) the district court erred by admitting Victor Wilson's testimony regarding Kevyn Smiley's statements.  Lastly, Harrell argues that the district court abused its discretion by denying his motion for a mistrial.  After thorough review, we affirm.

We review a district court's denial of a motion to suppress evidence as a mixed question of law and fact.  United States v. Lewis, 674 F.3d 1298, 1302 (11th Cir. 2012).  Rulings of law are reviewed de novo, while the district court's findings of fact are reviewed for clear error, in the light most favorable to the prevailing party below.  Id. at 1302-03.  We review constitutional sentencing issues de novo.

United States v. Steed, 548 F.3d 961, 978 (11th Cir. 2008).  We also review the district court's application and interpretation of the Sentencing Guidelines de novo, and review the district court's factual findings for clear error.  United States v. Smith, 480 F.3d 1277, 1278 (11th Cir. 2007).  We review the sentence a district court imposes for "reasonableness," which "merely asks whether the trial court abused its discretion."  United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (quoting Rita v. United States, 551 U.S. 338, 351 (2007)).

We review the district court's denial of a motion to sever for abuse of discretion.  United States v. Walser, 3 F.3d 380, 385 (11th Cir. 1993).  We will not reverse the denial "absent a clear abuse of discretion resulting in compelling prejudice against which the district court could offer no protection."  Id.  We likewise review the decision to admit co-conspirator statements for abuse of discretion. United States v. Matthews, 431 F.3d 1296, 1308 (11th Cir. 2006).  We review the district court's finding that a statement was made in furtherance of a conspiracy for clear error.  United States v. Miles, 290 F.3d 1341, 1351 (11th Cir. 2002).  Finally, we review the denial of a motion for a mistrial for abuse of discretion.  United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003).

First, we disagree with Colbert that the district court erred by failing to suppress the wiretap evidence.  An application seeking to authorize a wiretap must:

> include . . . a full and complete statement of the facts and circumstances relied upon by the  applicant, to justify his belief that an order should be

3

issued . . . [and] a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous . . . .

18 U.S.C. § 2518(1)(b) and (c).  "The necessity requirement is designed to ensure that electronic surveillance is neither routinely employed nor used when less intrusive techniques will succeed."  United States v. Van Horn, 789 F.2d 1492, 1496 (11th Cir. 1986).  The affidavit must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.  United States v. De La Cruz Suarez, 601 F.3d 1202, 1214 (11th Cir. 2010).  However, the government is not required to comprehensively exhaust all possible investigative techniques before applying for a wiretap.  Id.  Wiretap affidavits are evaluated in a "common sense fashion," using "flexible standards."  United States v. Hyde, 574 F.2d 856, 867 (5th Cir. 1978) (quotation omitted).[1]

The fact that alternative investigative measures were partially successful does not necessarily render electronic surveillance unnecessary.  United States v. Perez, 661 F.3d 568, 582 (11th Cir. 2011).  In Perez, an agent's affidavit recounted several ways that the government's investigation had failed to reveal important evidence, and we held that the government met the "necessity" requirement.  Id.

Here, the district court did not err in denying the motion to suppress the wiretap evidence.  The Special Agent's affidavit detailed the alternative

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981.

4

investigative measures that had been tried, with limited success or value, and explained why certain measures were not tried. The affidavit, therefore, explained the retroactive or prospective failure of several investigative techniques, and sufficiently satisfied the necessity requirement. Further, although some of the alternative investigative measures were partially successful, that did not render electronic surveillance unnecessary.

We also are unpersuaded by Colbert's argument that Section 924(c)(1) violates his constitutional rights. We've held that mandatory minimum sentencing does not deprive a defendant of an individualized sentencing process in violation of due process. United States v. Holmes, 838 F.2d 1175, 1177 (11th Cir. 1998). As for Eighth Amendment challenges, mandatory minimum sentencing does not, in and of itself, constitute cruel and unusual punishment. United States v. Willis, 956 F.2d 248, 251 (11th Cir. 1992). Thus, in a non-capital case, the mandatory nature of the penalty is irrelevant for proportionality purposes, and the sentence is evaluated as if it were imposed in the exercise of the sentencing court's discretion. United States v. Farley, 607 F.3d 1294, 1343 (11th Cir. 2010).

When mounting an Eighth Amendment challenge to a non-capital sentence, the defendant must make a threshold showing that the sentence imposed is grossly disproportionate to the offense committed. United States v. Raad, 406 F.3d 1322, 1324 n.4 (11th Cir. 2005). Generally, a sentence within the statutory limits is

neither excessive nor cruel and unusual under the Eighth Amendment. <u>United States v. Johnson</u>, 451 F.3d 1239, 1243 (11th Cir. 2006). We have never found a term of imprisonment imposed on a competent adult to violate the Eighth Amendment. <u>See</u> <u>Farley</u>, 607 F.3d at 1343. Rather, we have repeatedly upheld the constitutionality of mandatory minimum sentences, up to and including, life imprisonment. <u>See, e.g.</u>, <u>United States v. Lopez</u>, 649 F.3d 1222, 1248 (11th Cir. 2011) (upholding mandatory life sentence without parole for defendant convicted of cocaine conspiracy with two prior drug convictions).

Section 924(c)(1) is not unconstitutional. In <u>Holmes</u>, we expressly rejected Colbert's argument that the application of mandatory minimum sentencing violates due process principles. Only the Supreme Court or our Court sitting en banc can judicially override a prior panel decision, and neither has overruled <u>Holmes</u>. <u>Cargill v. Turpin</u>, 120 F.3d 1366, 1386 (11th Cir. 1997). As for his Eighth Amendment claim, Colbert has not met the requisite threshold showing that the total sentence imposed was grossly disproportionate to his offenses. The district court sentenced Colbert to a total of 20 years' imprisonment, following his convictions for one count of conspiracy to commit armed bank robbery, one count of conspiracy to use, carry, or possess a firearm in furtherance of the conspiracy to commit armed bank robbery, one count of armed bank robbery, one count of using, carrying, or possessing a firearm in furtherance of bank robbery, and three counts

of attempted bank robberies.  Colbert could have been sentenced to life in prison, and his 20-year sentence -- well within the statutory limits -- was not excessive nor cruel and unusual under the Eighth Amendment.

Next, we are unconvinced by Colbert's claim that the district court erred by sentencing him based on relevant conduct not charged or found by the jury.  The Supreme Court has established that any fact that increases the penalty for a crime is an "element" to be submitted to the jury and found beyond a reasonable doubt. Alleyne v. United States, 570 U.S.__, 133 S. Ct. 2151, 2155 (2013).  The Supreme Court also held that mandatory minimum sentences increase the penalty for a crime, so any fact that increases the mandatory minimum is an "element" to be submitted to the jury. Id.  But, since Alleyne, we've said that a district court may continue to enhance a defendant's sentence based upon judicial fact findings, so long as its findings do not increase the statutory maximum or minimum sentence. United States v. Charles, 757 F.3d 1222, 1225 (11th Cir. 2014).  The sentencing court must find that the relevant conduct was established by a preponderance of the evidence.  See United States v. Saavedra, 148 F.3d 1311, 1314 (11th Cir. 1998).

"Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."  United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).  Therefore, we defer

to the fact finder's determinations, unless his understanding of the facts was "unbelievable." See id. (quotation omitted).

In this case, attributing the relevant conduct did not increase Colbert's statutory mandatory minimum sentence, and did not implicate Alleyne. Further, the district court did not clearly err in finding that the relevant conduct concerning a Wells Fargo robbery had been established by a preponderance of the evidence. As the record reveals, the Wells Fargo robbery followed the robbery of which Colbert was convicted, and preceded the three attempted robberies of which he was also convicted. Further, the court found that the modus operandi was similar in all robberies, and the physical evidence was compelling. Lastly, the court reasonably credited one witness's trial testimony over another witness's testimony at sentencing, and we will not disturb those credibility determinations.

Colbert has also failed to show that his sentence was substantively unreasonable. In reviewing the "'substantive reasonableness of [a] sentence imposed under an abuse-of-discretion standard,'" we consider the "'totality of the circumstances.'" Pugh, 515 F.3d at 1190 (quoting Gall v. United States, 552 U.S. 38, 51 (2007)). The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" listed in 18 U.S.C. § 3553(a).[2]

---

[2]    The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

"[W]e will not second guess the weight (or lack thereof) that the [court] accorded to a given [§ 3553(a)] factor ... as long as the sentence ultimately imposed is reasonable in light of all the circumstances presented." United States v. Snipes, 611 F.3d 855, 872 (11th Cir. 2010) (quotation, alteration and emphasis omitted). We will vacate a sentence only if we "are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotations omitted). The party challenging the sentence bears the burden to show it is unreasonable. United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court did not abuse its discretion in sentencing Colbert to 20 years' imprisonment, instead of the 15-year sentence he requested. Although Colbert had a minor criminal history, the offenses were serious charges with threats to public safety. Further, even if Colbert was only 28 years old at the time of his conviction, his sentence was not substantively unreasonable. Indeed, the

---

offense; (3) the need for the sentence imposed to afford adequate deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) the pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

court said it considered all of the § 3553 factors, and believed a 20-year sentence was appropriate.  Accordingly, we affirm Colbert's convictions and sentences.

As for Rollins's claim that the district court abused its discretion by denying his motion for severance, we disagree.  In determining the merits of a motion to sever, the district court must balance the possibility of prejudice to the defendant against the public interest in judicial efficiency and economy.  United States v. Eyster, 948 F.2d 1196, 1213 (11th Cir. 1991).  However, severance will only be granted if a defendant shows a joint trial would result in "specific and compelling prejudice to the conduct of his defense."  Id. at 1213-14 (quotation omitted).

Severance is mandated by the district court where compelling evidence not admissible against one or more codefendants will be introduced against another codefendant.  United States v. Blankenship, 382 F.3d 1110, 1123 (11th Cir. 2004).  However, the mere fact that there might be an "enormous disparity in the evidence admissible against [one defendant] compared to the other defendants is not a sufficient basis for reversal."  Id. (quotation omitted).  In other words, a defendant does not suffer the necessary compelling prejudice for severance simply because much of the evidence presented at trial is only applicable to codefendants.  Id.  There is also a strong presumption that jurors can compartmentalize evidence by respecting instructions specifying the defendants against whom the evidence may be considered.  Id.  Severance must be granted only where the evidence is so

10

convincing that a limiting instruction is unlikely to prevent the jury from considering the evidence against all codefendants. Id. at 1224. Alternatively, severance is appropriate when the sheer number of defendants and charges with different standards of proof and culpability, and the massive volume of evidence, makes it nearly impossible for a jury to juggle everything properly and assess the guilt or innocence of each defendant independently. Id.

Here, the district court did not abuse its discretion by denying Rollins a severance. As the record shows, the court instructed the jury to consider the case of each defendant separately, and there is a presumption that the jury followed those instructions. Moreover, nothing suggests that it was impossible for the jury to juggle the evidence in this case -- only three defendants were charged, each charge had the same burden of proof, and the jury did not otherwise indicate it was confused. Thus, Rollins did not suffer compelling prejudice merely because there was evidence presented at trial only admissible against his codefendants.

We also reject Rollins's argument that the district court erred by admitting Victor Wilson's testimony regarding co-conspirator Kevyn Smiley's statements. Hearsay is generally inadmissible. Fed. R. Evid. 802. But, an out-of-court statement is not hearsay if it "is offered against an opposing party and … was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). Before a co-conspirator's statement can be admitted, the

11

government must prove that (1) a conspiracy existed, (2) the conspiracy included the declarant and the defendant against whom the statement is offered, and (3) the statement was made during the course of and in furtherance of the conspiracy. United States v. Underwood, 446 F.3d 1340, 1345-46 (11th Cir. 2006).

We apply a liberal standard to determine whether a statement was made in furtherance of a conspiracy. Miles, 290 F.3d at 1351. The statement does not need to be necessary to the conspiracy, it just must further the interests of the conspiracy in some way. Id. If a statement could have been intended to affect future dealings between the parties, then the statement is in furtherance of the conspiracy. United States v. Caraza, 843 F.2d 432, 436 (11th Cir. 1988).

In this case, the district court did not clearly err in admitting Wilson's testimony about what Smiley told him. As the record shows, Wilson had discussed robbing a bank with Colbert, Smiley, and Harrell before he returned to jail, including the fact that Wilson would steal a getaway vehicle, and Harrell would be the getaway driver. While Wilson might have originally thought they were joking about robbing banks, at the time he called Smiley, he knew it was not a joke. Wilson told Smiley that he wanted a piece of the action, and they had previously discussed bank robbery in detail, including who would play what role. After Wilson got out of jail, he assisted in the conspiracy by stealing vehicles, and was present during the casing of banks. Smiley's statements explained to Wilson how

12

the robbery depicted on television had gone, and could have been intended to affect future dealings between them. On this record, it is clear that Wilson and Smiley were co-conspirators, and that Smiley's statements updated Wilson on the conspiracy, and, thus, were in furtherance of the conspiracy.

Lastly, we find no merit to Harrell's claim that the district court abused its discretion by denying his motion for a mistrial. "The decision to grant a mistrial is within the discretion of the trial judge since he is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Saget, 991 F.2d 702, 707-08 (11th Cir. 1993) (quotation omitted). A defendant is entitled to a mistrial only if he shows substantial prejudice -- that is, that absent the prejudice, the outcome of the trial would have been different. United States v. Chavez, 584 F.3d 1354, 1362 (11th Cir. 2009). However, when a district court gives a curative instruction, we will reverse the denial of a grant of mistral only if the evidence was so highly prejudicial that it was incurable. United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007). Further, if the record contained sufficient independent evidence of guilt, it was a harmless error. Id.

In Bruton v. United States, a witness testified in a joint trial that a codefendant had confessed that he and the petitioner had committed armed robbery. 391 U.S. 123, 124 (1968). The district court instructed the jury that the evidence of the confession was inadmissible hearsay against the petitioner. Id. at

13

124-25.  The Supreme Court later said that the introduction of the confession posed a substantial threat to the petitioner's constitutional right of confrontation.  Id. at 137.  It held that despite clear instructions for the jury to disregard the inadmissible hearsay as to the petitioner, a limiting instruction in the context of a joint trial was inadequate to substitute for the petitioner's right of cross-examination.  Id.

Here, Harrell claims that the district court abused its discretion by denying him a mistrial based on a gesture Collins made during trial.  Specifically, one juror wrote a note to the court reporting that "Defendant Colbert ran his finger across his throat, and Mr. Wilson was looking at him when he did it.'"  Harrell argues that because he was accused of a conspiracy with Colbert, the gesture was substantially prejudicial to him.  However, after receiving the note, the district court instructed the jury to disregard what they had seen, if they had seen it, and that the court had taken care of the matter.  The court later instructed the jury that it could only consider evidence when assessing guilt, which was testimony and exhibits.  This instruction was sufficiently curative, and Harrell does not cite any authority demonstrating otherwise.  Further, the jury is presumed to have followed the court's instructions, and Harrell has not offered any evidence to disprove that presumption.  Moreover, Colbert's in-court gesture was not an incurable error, since it was not an in-court confession directly implicating Harrell.

14

Regardless, the error, if any, was harmless. Strong evidence of Harrell's guilt was introduced at trial, including that: Harrell was identified as the driver of a vehicle near one of the robberies; Harrell had been in one of the robbed banks prior to the robbery; and Harrell had previously been in one of the banks that was attempted to be robbed. Phone conversations between the co-conspirators were also presented. In addition, Wilson's testimony, unrelated to Colbert's gesture, implicated Harrell. Therefore, there would not have been a different result absent Colbert's threatening gesture, and we affirm Harrell's convictions.

**AFFIRMED**.