[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13705
Non-Argument Calendar
_____

D. C. Docket No. 03-80651-CV-WJZ

MARK GAUTHIER,

Petitioner-Appellant,

versus

PAT MEKUSKER, Superintendent,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 27, 2006)**

Before DUBINA, HULL and FAY, Circuit Judges.

PER CURIAM:

Mark Gauthier, a Florida prisoner, appeals pro se the district court's order denying his petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. Because Gauthier filed his § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), the AEDPA's provisions govern this appeal. Gauthier argues that the district court erred in denying his claims of ineffective assistance of trial counsel based his counsel's (1) failure to move for the dismissal of charges as barred by the applicable statute of limitations, and (2) failure to challenge testimony by an investigating detective regarding statements made to him by the victim. For the reasons set forth more fully below, we affirm.

Gauthier is serving a total sentence of life imprisonment for committing two counts of capital sexual battery, in violation of Fla.Stat. § 794.011(2)(a) & (b) ("Counts 1 & 2"), three counts of sexual activity with a child, in violation of Fla.Stat. § 794.011(8)(b) ("Counts 3, 4 & 5"), and two counts of lewd assault, in violation of Fla.Stat. § 800.04(4) ("Counts 6 & 7"). He filed a pro se § 2254 petition, asserting, among other claims, that his trial counsel provided ineffective assistance by (1) failing to move for the dismissal of the lewd-assault charges in Counts 6 & 7 as barred by the applicable statute of limitations ("Ground Two");[1]

---

[1] In Florida, any person who handles, fondles, or makes an assault upon any child under the age of 16 years in a lewd, lascivious, or indecent manner is guilty of a felony of the second

2

and (2) failing to object to testimony by the investigating officer relating to a prior statement given to him by the victim, which Gauthier contended constituted inadmissible hearsay testimony ("Ground Four").[2]

Identifying Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), as the controlling caselaw in Gauthier's § 2254 petition, the state responded that relief was not warranted as to Gauthier's claim of ineffective assistance in Ground Two because, under Florida law, a variance between the dates proved at trial and those alleged in the indictment may occur under circumstances that existed in the instant case. The state also summarily asserted that (1) Gauthier was arguing, essentially, that his guilty verdicts should be reversed because, on at least one day in each of the applicable time periods, the victim was not under age 12 or 16, respectively, and, thus, did not fit under the statute which was charged; (2) the record included testimony by the victim that the criminal acts occurred prior to her birthday in each of the time periods alleged, and (3) Gauthier was not prejudiced in preparing his defense. In addressing Gauthier's claim of ineffective assistance in Ground Four, the state contended that Gauthier, in effect, was

_____

degree. See Fla.Stat. § 800.04(4). A prosecution for a second-degree felony must be commenced, if at all, within three years after it is committed. See Fla.Stat. § 775.15(2)(b).

[2] Because the district court's denial of Gauthier's other § 2254 claims are not included in our certificate of appealability ("COA"), these denials are not reviewable on appeal. See Murray v. United States, 145 F.3d 1249, 1250-51 (11th Cir. 1998) ("appellate review is limited to the issues specified in the COA").

3

challenging an evidentiary ruling by the state court and that such a ruling is not cognizable in a § 2254 petition.[3]

In filing this response, the state also submitted copies of records from Gauthier's state-court proceedings. Prior to Gauthier's filing his § 2254 petition, he was charged as outlined above and convicted as charged. The trial court sentenced him to two terms of life imprisonment, with minimum mandatory terms of 25 years' imprisonment, on Counts 1 and 2; three terms of 22 years' imprisonment on Counts 3, 4 & 5; and two terms of 15 years' imprisonment on Counts 6 & 7, with all terms to run concurrently. Gauthier's convictions and sentences were affirmed on direct appeal in a decision without a written opinion. Gauthier subsequently filed a pro se amended petition for post-conviction relief, pursuant to Fla.R.Crim.P. 3.850, alleging that he received ineffective assistance of trial counsel, based on, among other things, the arguments at issue in this appeal. The state trial court summarily denied Gauthier's Rule 3.850 petition, and this denial was affirmed on appeal in a per curiam decision without written opinion.

During Gauthier's jury trial, the victim, who was Gauthier's step-daughter, testified that she was born on February 16, 1979, and that Gauthier touched her on

---

[3]Alternatively, the state contended, without citing to support, that failing to object to hearsay evidence "does not fall so far outside the range of professional norms as to constitute ineffective assistance under Strickland."

4

and in her vagina at the time that she lived in the City of Fort Lauderdale, which was when she was four years' old. The victim further testified that the assaults continued while she attended the first grade, and continued even after she had moved to Palm Beach County at the age of seven or eight and for many years thereafter. On the other hand, the victim conceded during cross-examination that she previously had testified during her deposition that no penetration occurred before her puberty ended.

The state subsequently introduced, without objection, testimony from Eric Coleman, a detective with the Palm Beach County Sheriff's Office, that, among other things, the victim told him during an unsworn statement, prior to her deposition, that Gauthier both had inserted his fingers inside her vagina and attempted to penetrate her vagina prior to puberty.[4] In addition to this testimony, the state introduced and played for the jury a tape-recorded controlled conversation between Gauthier and the victim, which occurred prior to Gauthier's arrest and included statements by Gauthier implicating himself in at least some of the charged offenses. Moreover, the state introduced a taped statement Gauthier gave to the police, which also was played for the jury, and which included Gauthier's

---

[4] As Gauthier contends in his brief on appeal, during closing arguments, the state argued as follows: "The victim has testified in this [c]ourt that this is what has occurred to her. Detective Coleman has corroborated her statement that that is what was told to him."

admission that at least some of the sexual acts started when the victim was between the ages of four and six, when they were living in Fort Lauderdale.[5]

At the conclusion of the state's case, Gauthier unsuccessfully moved for a judgment of acquittal as to Counts 1 and 2, arguing, among other things, that, although the victim testified at trial that the offenses charged in Counts 1 and 2 occurred prior to her reaching the age of 12, she testified during her earlier sworn deposition that they occurred before she reached puberty.[6] Gauthier contended that, because there was no corroborating evidence relating to the age of the victim, he was entitled to acquittal on those charges.

Gauthier's sentencing transcript reflects that, in imposing a total sentence of life imprisonment the trial court "vehemently disagreed" with the recommendation in Gauthier's presentence investigation report ("PSI") that his sentences imposed on Counts 3 through 7 run consecutive to his life sentences. The court also confirmed that he had no discretion regarding the life sentences to be imposed on the capital offenses in Counts 1 and 2, other than whether the sentences were to be imposed concurrently or consecutively.

---

[5] During his trial testimony, as part of cross-examination, Gauthier also conceded that the victim had been under the age of 12 when the crimes commenced in Palm Beach County.

[6] In Florida, the offense of sexual battery is a capital felony when (1) the defendant is 18 years of age or older, and (2) the victim is younger than age 12. See Fla.Stat. § 794.011(2)(a).

6

Following the state's filing of its response to Gauthier's § 2254 petition, the magistrate judge entered an order to show cause, explaining that Gauthier's petition was not time-barred and that the court, therefore, would determine the claims on the merits. The magistrate also noted that the state, in filing its response, had "misperceived" Gauthier's claim in Ground Two and that Gauthier was contending that his trial counsel provided ineffective assistance by failing to challenge the charges in Counts 6 and 7 as time-barred by the three-year statute of limitations under Fla.Stat. § 775.15(2)(b). Noting that he could not determine from the records submitted when the state began prosecuting Gauthier on these charges and that the state had failed to submit a copy of the entire trial transcript, the magistrate directed the state to further address the merits of Gauthier's claim in Ground Two, produce all relevant state court documents, and to produce the missing portions of the trial transcript.

In complying with this show cause order, the state responded that the victim, who was born on February 16, 1979, and was age 16 on February 16, 1995, testified that she had moved from the home where she had resided with Gauthier on July 24, 1998, and that she had not reported the incidents until "a couple months after that." The state also explained that Gauthier was arrested on September 10, 1998, and was not charged with Counts 6 and 7 until January 25, 1999. The state

asserted that, because Gauthier's argument concerning the timely filing of Counts 6 and 7 related only to the lesser of the three sets of charges for which he was convicted, his total concurrent sentence was not effected by these convictions and any error, therefore, was harmless.

Gauthier replied that, irrespective of whether his total sentence would have been affected by his convictions for Counts 6 and 7 of his second amended indictment, his counsel's ineffective assistance in not moving to dismiss these counts resulted in the state using them to "prove up" Counts 1 and 2. Gauthier further contended, without citing to the record, that evidence relating to Counts 6 and 7 "was introduced at trial so excessively until it became a feature of the trial with no probative reason other than to show bad character and propensity."

The magistrate subsequently entered a report, recommending that the court deny Gauthier's § 2254 petition on the merits. The magistrate explained that, to the extent Gauthier was contending in Ground Two that his trial counsel provided ineffective assistance by not challenging the time-barred offenses in Counts 6 and 7, the record reflected that these offenses were time-barred. The magistrate also noted, however, that it was unclear from the record whether counsel's act of not moving for this dismissal was deficient because, although a defendant may strategically decide to waive his right to avoid

8

prosecution on time-barred offenses, and although Gauthier's counsel potentially was seeking to avoid conviction on the capital sexual abuse charges by not seeking the dismissal of these lesser included lewd-conduct offenses,[7] the state had failed to identify evidence in the record reflecting that Gauthier had made such a waiver.

The magistrate, nevertheless, found that Gauthier had failed to establish constitutional ineffective assistance of counsel because he had not shown that he was prejudiced by this conduct. In discussing this finding, the magistrate explained that, even if Gauthier's counsel had successfully asserted a defense based on this statute of limitations, the jury still would have heard and weighed the same evidence in connection with the other timely charged offenses. The magistrate also discussed that, because Gauthier's sentences were concurrent, his total sentence would remain the same even if his convictions in Counts 6 and 7 were set aside. The magistrate determined that no significant likelihood that Gauthier would suffer "adverse collateral consequences" existed because:

> "[a]ny argument that these convictions might in some way increase
> the amount of time Gauthier [had to] serve in prison before he [could]
> be paroled and/or might affect his future eligibility for release on
> parole and/or might affect sentences for later crimes committed at the
> earliest [19] years from now would be unavailing as doubtful and
> speculative, at best.

---

[7] The magistrate specifically noted that "[i]t is possible that defense counsel chose, as a matter of strategy, to waive the limitation defense in order to provide the jury with the opportunity to find Gauthier guilty of the least serious of all possible charged crimes."

9

Moreover, the magistrate noted that, given the serious nature of Gauthier's other convictions, it was not likely that the parole board would reach a different decision in the absence of the lewd-conduct offenses in Counts 6 and 7.

In addressing Gauthier's arguments in Ground Four that his trial counsel failed to challenge inadmissible hearsay testimony offered at trial by Detective Coleman, and that this testimony was impermissibly offered to corroborate the victim's trial testimony, the magistrate discussed that, even if the victim's prior consistent statements were offered to prove their truth, and this testimony was improperly admitted hearsay, Gauthier had failed to show that his counsel's failure to object to the introduction of this evidence had prejudiced him, in light of Gauthier's own tape-recorded admissions, as well as his admissions during trial that he rubbed the victim and performed oral sex on her.[8] Moreover, the magistrate noted that (1) the victim had testified about all of the charged acts during the trial, and (2) Gauthier had the opportunity during trial to cross-examine the victim. The magistrate concluded, therefore, that Gauthier's counsel did not provide

---

[8] The magistrate initially discussed that the Supreme Court, subsequent to Gauthier's trial, had concluded in Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), that, absent other grounds for admissibility, the Sixth Amendment's Confrontation Clause categorically bars the admission of testimonial hearsay evidence unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant. The magistrate, however, concluded that Crawford was not applicable retroactively on collateral review.

10

constitutionally ineffective assistance of counsel by failing to object to the introduction of this evidence.

Gauthier objected to the magistrate's report, arguing that his counsel's failure to object to the time-barred offenses in Counts 6 and 7 was not arguably sound trial strategy because his counsel could have, alternatively, relied on the lesser included offenses in Counts 3, 4 and 5. Gauthier contended that, had his counsel informed him that these offenses were time-barred, he would not have agreed to waive his right to have them dismissed, and that the record does not reflect that any waiver occurred. Gauthier also argued that: (1) he was prejudiced by his counsel's failure to move for this dismissal because the introduction of evidence relating solely to these offenses resulted in the jury hearing cumulative and corroborative evidence of bad acts; and (2) the magistrate should not have determined that his arguments relating to parole were "speculative."

Additionally, Gauthier challenged the magistrate's finding that his arguments in Ground Four were without merit, arguing that (1) he had not admitted to any of the elements at issue in Counts 1 and 2, and (2) the state's evidence concerning these counts consisted solely of the victim's "inconsistent testimony." Gauthier contended that he, instead, consistently asserted that digital and penal penetration never occurred prior to the victim's 12th birthday. Gauthier also

11

argued that Detective Coleman's testimony relating to the victim's earlier statement concerning these exact elements, were offered for the truth of the matter asserted, and improperly were offered to corroborate her trial testimony. The district court, after conducting an independent review, summarily adopted the magistrate's recommendation and denied Gauthier's § 2254 petition with prejudice.

As a preliminary matter, "in reviewing a district court's grant or denial of a habeas petition, we review the district court's findings of fact for clear error, and review[s] de novo both questions of law and mixed questions of law and fact." Peoples v. Campbell, 377 F.3d 1208, 1224 (11th Cir. 2004), cert. denied, 125 S.Ct. 2963 (2005). The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas retrials and to ensure that state-court convictions are given effect to the extent possible under law." Parker v. Sec'y for Dep't of Corrs., 331 F.3d 764, 768 (11th Cir. 2003) (quotation and internal marks omitted). Under the AEDPA, a federal court generally may not grant habeas relief unless the state court's decision either was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an

12

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) & (2).[9]

An unreasonable application of clearly established federal law under 2254(d)—the prong at issue here—is one in which the "state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the [petitioner's] case," or "either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extent that principle to a new context where it should apply." Williams v. Taylor, 529 U.S. 362, 407, 120 S.Ct. 1495, 1520, 146 L.Ed.2d 389 (2000). This standard requires the application of federal law "to be not only erroneous, but objectively unreasonable." Yarborough v. Gentry, 540 U.S. 1, 5, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003). Furthermore, to be entitled to deferential review under § 2254(d), "it is not necessary for the state court to explain its decision"; thus, even a summary rejection of a federal claim, such as here, qualifies as an adjudication entitled to deference. See Herring v. Sec'y, Dep't of Corrs., 397 F.3d 1338, 1347 (11th Cir.), cert. denied, 126 S.Ct. 171 (2005); see also Callahan v. Campbell, 427 F.3d 897, 937 n.28 (11th Cir. 2005)

---

[9] Applying this same deferential treatment, the AEDPA also provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." See 28 U.S.C. § 2254(e)(1).

13

(reiterating that we review the state court's decision, but not necessarily its rationale), petition for cert. filed, (U.S. April 13, 2006) (No. 05-10404).

Under Strickland—the clearly established law both parties agree govern the two issues in the instant appeal—a successful petitioner must show that (1) counsel's performance was deficient, and (2) this deficient performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. To establish ineffectiveness, a "defendant must show that counsel's representations fell below an objective standard of reasonableness." Id. In judging the reasonableness of counsel's challenged conduct, the reviewing court must examine the facts of the particular case, view these facts as of the time of counsel's conduct, and determine whether acts or omissions the defendant has challenged "were outside the wide range of professionally competent assistance." Id. at 690, 104 S.Ct. at 2066. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in exercise of reasonable professional judgment." Id. Thus, judicial scrutiny of counsel's performance must be "highly deferential." Id. at 689, 104 S.Ct. at 2065 (quotation omitted).

To satisfy the prejudice prong, the petitioner must show that there is a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Id. at 694, 110 S.Ct. at 2068. In

14

determining whether such a "reasonable probability" exists the Supreme Court explained in Strickland that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." Id. at 693, 104 S.Ct. at 2067. Instead, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068. Furthermore, because both prongs of Strickland must be met, once a court decides that one of the requisite showings has not been made, it need not decide the other prong. Id. at 697, 104 S.Ct. at 2069; see also Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir 1995) (explaining that we may decline to address whether counsel's performance was unreasonable when the prejudice prong cannot be satisfied).

Gauthier first argues on appeal that the district court erred in denying his claim that his counsel provided ineffective assistance of counsel by failing to move for the dismissal as time-barred of his charges in Counts 6 and 7 because, if this omission had constituted trial strategy, (1) his counsel, instead, could have relied on the lesser included offenses in Counts 3, 4 and 5, and (2) the record should contain a waiver of Gauthier's rights under the applicable statute of limitations. Gauthier also contends that the court erred in determining that he was not prejudiced because unidentified evidence relating to Counts 6 and 7 would not have been relevant to the remaining offenses. Moreover, Gauthier argues that the

15

court erred in determining that no prejudice occurred, based on its finding that there was no significant likelihood of "collateral consequences," because his convictions for Counts 6 and 7 will effect his "presumptive date" for parole, as well as the likelihood of him receiving parole when eligible.

As discussed above, a prosecution for a second-degree felony must be commenced, if at all, within three years after it is committed. See Fla.Stat. § 775.15(2)(b). However, the version of Fla.Stat. § 775.15(7), which was in effect at the time Gauthier committed the instant offenses, provided that, if the victim of a violation of this offense was under the age of 16, the applicable period of limitations, if any, did not begin to run until the victim had reached the age of 16, or the violation was reported to a law enforcement agency or other governmental agency, whichever occurred earlier. See Fla.Stat. § 775.15(7) (1985).

The offenses charged in Counts 6 and 7, which were second-degree felonies, occurred no later than February 16, 1995. See Fla.Stat. § 800.04(1) (identifying offenses as second-degree felonies). Gauthier was not arrested until September 10, 1998, and he was not charged with these offenses until January 25, 1999. Thus, the state did not timely commence its prosecution against Gauthier within three years of his committing the offenses charged in Counts 6 and 7. See Fla.Stat. § 775.15(2)(b). Moreover, even after applying the tolling provision in the

16

applicable version of § 775.15(7), the victim turned 16 on February 16, 1995, and the state, thus, only had until February 16, 1998 to commence prosecution on these offenses. Thus, the charges against Gauthier in Counts 6 and 7, which were filed on January 25, 1999, were time-barred.

In determining whether Gauthier's trial counsel provided ineffective assistance of counsel by not moving to dismiss these charges, the right not to be convicted of an offense for which prosecution is barred by a limiting statute is substantive and fundamental in Florida. See Tucker v. State, 417 So.2d 1006, 1013 (Fla. Dist. Ct. App. 1982). As a matter of trial strategy, a defendant may waive his right to assert a statute of limitations. See id. (explaining that a defendant who believes that a statute of limitations will not work to his advantage is permitted to waive it either pretrial or before the jury retires).[10] However, for such a waiver to be valid, this waiver must meet the same strict standards that courts have applied in determine whether there has been an effective waiver as to other fundamental rights, that is, the waiver must be "express and certain." See id.

---

[10] We have explained that there is a strong presumption that counsel's performance was reasonable and adequate, with great deference being shown to choices dictated by reasonable trial strategy. See Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994). Indeed, a successful petitioner must show that "no competent counsel would have taken the action that his counsel did take." See Callahan, 427 F.3d at 933 (quotation omitted).

17

Here, the state has not cited to evidence in the record reflecting that Gauthier expressly waived his rights relating to the statute of limitations in § 775.15(2)(b).

Nevertheless, we need not determine whether counsel's conduct of not moving for a dismissal as time-barred constituted constitutionally deficient performance under the first prong of Strickland, because Gauthier failed to show that he was prejudiced. See Strickland, 466 U.S. at 697, 104 S.Ct. at 2069; Waters, 46 F.3d at 1510. Gauthier contended that he was prejudiced by his counsel's failure to move for a dismissal of the charges in Counts 6 and 7 because the jury, otherwise, would not have heard evidence relating to these lewd-assault charges.

Gauthier, however, failed to identify what evidence, if any, would not have been admissible if these charges had been dismissed prior to the commencement of his trial. Indeed, the victim testified at trial that she had been touched on and in her vagina at the time that she lived in the City of Fort Lauderdale, which was when she was age four, and that the assaults continued while she attended the first grade, and continued even after she had moved to Palm Beach County at the age of seven or eight and for many years thereafter. Moreover, Gauthier failed to explain how "there is a reasonable probability that the outcome of the proceeding would have been different" absent evidence relating to his "handl[ing], fondl[ing], or mak[ing] an assault upon any child under the age of 16 years in a lewd, lascivious, or

18

indecent manner," see Fla.Stat. § 800.04(4), when he also was charged with, and convicted of, the capital felony of sexual battery on a victim who was younger than age 12, see Fla.Stat. § 794.011(2)(a).

Furthermore, to the extent Gauthier is contending that he suffered "collateral damages" based on his parole eligibility the Florida legislature, in 1978, adopted the Objective Parole Guidelines Act, which revised the method utilized by the Florida Parole and Probation Commissions in making parole decisions, including establishing a structured parole review process based on objective criteria and requiring that an inmate be interviewed within a specified time period depending on the length of his sentence and other factors. See Fla.Stat. § 947.16. Nevertheless, under Fla.Stat. § 947.18, which was enacted in 1941 and became a part of the Objective Parole Guidelines in 1978:

> No person shall be placed on parole until and unless the commission finds that there is a reasonable probability that, if the person is placed on parole, he or she will live and conduct himself or herself as a respectable and law-abiding person and that the person's release will be compatible with his or her own welfare and the welfare of society.

See Fla.Stat. § 947.18. Indeed, in addressing an argument that the Commission abused its discretion in declining to authorize a recommended effective parole release date, the Florida Supreme Court in Florida Parole and Probation Commission v. Paige, 462 So.2d 817 (Fla. 1985), concluded that the Commission

19

did not abuse its discretion in relying on information that was previously considered, or available for consideration, in setting the inmate's presumptive parole release date.  See id. at 820.

Because the Commission here also will have the ultimate discretion in deciding whether to authorize a parole release date, regardless of when Gauthier's presumptive release date is set, any argument that he was prejudiced by the inclusion of the charges in Counts 6 and 7 in determining this release date is merely speculative.  Gauthier, therefore, failed to show that "there is a reasonable probability that the outcome of the proceeding would have been different."  See Strickland, 466 U.S. at 693, 104 S.Ct. at 2067.  Thus, the state trial court did not unreasonably apply the prejudice prong of Strickland as to Gauthier's argument in Ground Two, and the district court did not err in denying this § 2254 claim.

Gauthier also argues on appeal that the district court erred in denying his claim that his counsel provided constitutionally ineffective assistance by failing to object to Detective Coleman's testimony regarding statements made to him by the victim because this evidence constituted impermissible consistent and corroborating hearsay testimony.  Gauthier contends that he was prejudiced by this conduct because, although he confessed to some acts prior to, and during, his trial, he never conceded the element of penetration.  Additionally, Gauthier asserts that

20

this testimony was (1) particularly prejudicial because it came from a law enforcement officer, and (2) not admissible to rebut charges of recent fabrication or improper influence or motive.

Under Florida law, a prior consistent statement generally is not admissible to bolster a witness's testimony unless, like any other hearsay statement, it qualifies under a hearsay exception. Harris v. State, 843 So.2d 856, 861 (Fla. 2003). However, a prior consistent statement may be admitted as non-hearsay evidence if: (1) the person who made the prior consistent statement testifies at trial and is subject to cross-examination concerning that statement; and (2) the statement is offered to rebut an express or implied charge of improper influence, motive, or recent fabrication. Id. at 861-62 (citing Fla.Stat. § 90.801(2)(b)). Thus, in Harris, when the person who made the prior consistent statement testified at trial and was subject to cross-examination, she admitted during cross-examination that she was motivated to testify against the defendant, in part, because she desired a favorable sentence, and her prior consistent statement was made before she was arrested, the Florida Supreme Court concluded that her prior consistent statement was admitted properly as non-hearsay evidence. See id. at 862.

Furthermore, under Fed.R.Evid. 801(d)(1)(B), which is substantially the same as § 90.801(2)(b), a prior consistent statement is not hearsay if (1) the

declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and (2) the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive. See Fed.R.Evid. 801(d)(1)(B); see also Monday v. State, 792 So.2d 1278, 1281 (Fla. Dist. Ct. App. 2001) (noting that the provisions in § 90.801(2)(b) and § 801(d)(1)(B) are "substantially the same"). The Supreme Court in Tome v. United States, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), explained that "[t]he [Federal Rules of Evidence] do not accord this weighty, non-hearsay status to all prior consistent statement," and that "[p]rior consistent statement may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited." Id. at 157, 115 S.Ct. at 701. We also have explained that "prior consistent statements are treated as admissible non-hearsay only if they are offered to rebut a specific allegation of recent fabrication, not to rehabilitate credibility that has been generally called into question." United States v. Drury, 396 F.3d 1303, 1316 (11th Cir.), cert. denied, 126 S.Ct. 336 (2005) (emphasis in original).[11]

---

[11] The Supreme Court also explained in Tome that, to be admissible under Rule 801(d)(1)(B), prior consistent statements must have been made before the alleged influence or motive to fabricate arose. See Tome, 513 U.S. at 157-58, 115 S.Ct. at 701. We, however, have concluded that, whether a witness had a motive to fabricate when prior consistent statements were made "is plainly a question of fact to be resolved by the trial court based precisely on the particular circumstances of an individual case." See United States v. Prieto, 232 F.3d 816, 821-22 (11th Cir. 2000) (declining to adopt a bright-line rule that motive to fabricate necessarily and

In United States v. Ettinger, 344 F.3d 1149 (11th Cir. 2003), we examined a defendant's challenge to the district court's introduction, pursuant to Rule 801(d)(1)(B), of testimony from a law enforcement officer relating to a prior statement he gave to an agent with the Federal Bureau of Investigations ("FBI"). See id. at 1160. We discussed that the officer's statement, as contained in the FBI report, was consistent with the agent's testimony during trial. See id. at 1160-61. We also explained that, during cross-examination, the defendant had at least implied that the officer had fabricated his testimony. See id. at 1161. Thus, we concluded that the challenged evidence was properly admitted to rebut an implied charge of recent fabrication under Rule 801(d)(1)(B). See id.

Similarly, in the instant case, the victim testified during Gauthier's trial that Gauthier had touched her on and in her vagina when she was four years' old. Moreover, during cross-examination, Gauthier's counsel, in eliciting the victim's concession that she had testified during her deposition that no penetration occurred before her puberty ended, at least implied that she was fabricating this testimony. Thus, the state's subsequent introduction of Detective Coleman's statement that the victim, prior to giving her deposition, had given a statement consistent with her trial testimony, that is, a statement that Gauthier both had inserted his fingers into

automatically attaches upon arrest).

23

her vagina and attempted to penetrate it prior to puberty, was admissible as non-hearsay evidence under § 90.801(2)(b). See Monday, 792 So.2d at 1282 (concluding that the admissibility of a prior consistent statement to rehabilitate a witness who has been impeached with a prior inconsistent statement is within the discretion of the trial judge, and that the judge should determine if the statement "has probative force bearing on credibility beyond merely showing repetition").

Gauthier, thus, failed to show that his trial counsel's lack of objections to this consistent statement constituted deficient performance. See Sims v. Singletary, 155 F.3d 1297, 1306-08 (11th Cir. 1998) (explaining that counsel should not have been found ineffective for failing to object to testimony that was admissible at the time of the petitioner's trial). Furthermore, because the trial court did not unreasonably apply the performance prong of Strickland, we need not decide whether Gauthier was prejudiced by his counsel's failure to object to this evidence. See Strickland, 466 U.S. at 697, 104 S.Ct. at 2069; see also Waters, 46 F.3d at 1510.[12]

---

[12] To the extent the Supreme Court, subsequent to Gauthier's trial, decided in Crawford that, absent other grounds for admissibility, the Sixth Amendment's Confrontation Clause categorically bars the admission of testimonial hearsay evidence unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant, see Crawford, 541 U.S. at 68, 124 S.Ct. at 1374, Gauthier has abandoned any arguments relating to this holding by not including them in his appellate brief, see United States v. Levy, 416 F.3d 1273, 1275-76 (11th Cir.) (reiterating our "prudential rule of declining to consider issues not timely raised in a party's initial brief"), cert. denied, 126 S.Ct. 643 (2005).

24

Accordingly, we conclude that the trial court did not unreasonably apply Strickland in finding without merit Gauthier's arguments in Grounds Two and Four of his § 2254 petition, and that the district court, thus, did not err in denying these claims. We, therefore, affirm.

**AFFIRMED.**