**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSEPH WAYNE LYNCH, II,

    Defendant-Appellant.

No. 16-1242

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:15-CR-00320-RM-1)**

---

Lynn C. Hartfield, Law Office of Lynn C. Hartfield, LLC, Denver, Colorado, for Defendant-Appellant.

Jason St. Julien, Assistant United States Attorney (Robert C. Troyer, Acting United States Attorney, with him on the brief), Office of the United States Attorney, Denver, Colorado, for Plaintiff-Appellee.

---

Before **KELLY**, **McKAY**, and **McHUGH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

    A jury found Defendant Joseph Wayne Lynch II guilty of violating 49 U.S.C.

§ 46504, which prohibits the in-flight assault or intimidation of a flight crew member or

flight attendant that interferes with his or her duties. He received a sentence of four

months, followed by a three-year term of supervised release. On appeal, Defendant

challenges the district court's interpretation of the statute, the constitutionality of the

statute, and the length of his sentence.

I.

The conduct at issue occurred in 2015 when Defendant was a first-class passenger

on a flight from Philadelphia to Denver. Defendant, who had consumed at least six beers

prior to boarding, began behaving in a loud, unruly manner. He repeatedly placed his

hands on first-class flight attendant Kimberly Ander's lower back as she was serving him

beverages, which made her feel "very uncomfortable," and she tried to move out of his

reach each time. (Appellant's App. Vol. IV at 181.) Later in the flight, Defendant

"hugged [Attendant Ander] and kissed [her] on the neck" on his way back from the

bathroom, causing her to push him away and ask him not to do that. (*Id.* at 181-82, 184.)

Even after Attendant Ander verbally asked Defendant not to place his hand on her lower

back, he continued to do so. She testified that this unwanted touching emotionally

impacted her ability to do her duties.

Defendant's behavior led Attendant Ander to refuse to serve him a third in-flight

drink, at which point he became "irate," started yelling at her, stood up from his seat, and

shouted profanities such as "f*** this airline." (*Id.* at 184-85.) Fearful that the situation

was "going to go over the edge and become physical or violent at any moment,"

Attendant Ander called one of the other flight attendants to come help her in first-class.

(*Id.* at 184-85, 194.) She also prepared a rubber ice mallet, handcuffs, and a pot of hot

2

coffee to use in case Defendant became violent. Main cabin flight attendant Carolyn Scott then came to assist Attendant Ander in attempting to calm Defendant, leaving the third flight attendant in charge of the remaining 138 main cabin passengers, including an unaccompanied minor who had been in Attendant Scott's care. Attendant Scott asked Defendant to calm down, at which point he repeatedly yelled, "F*** you, c***." (*Id.* at 230.) Defendant also shouted "let's go" at Attendant Scott and threatened to "take this airline down" through a lawsuit and negative social media. (*Id.* at 186.)

The attendants stayed in communication with the flight crew throughout Defendant's tirade, which the pilots could hear over the ambient noise of the slipstream and engine, even with their headphones on. As Defendant's behavior escalated, the captain gave the radios to his co-pilot so he could call ahead to dispatch and apprise them of the situation—an action that "[took] one half of the safety margin away" since the co-pilot had to fly the plane, man the radios, and receive weather updates without assistance during that period. (*Id.* at 293-94.) Defendant's volatile behavior lasted for roughly the last hour and a half of the flight. Attendant Scott testified that she never returned to the main cabin to help the third attendant with the main cabin duties because she was afraid to leave Attendant Ander alone with Defendant in first class. Likewise, because of Defendant's behavior, Attendant Ander was not able to perform all her duties as the lead flight attendant.

Defendant was arrested upon landing. While in custody, he continued his vulgar exclamations and verbal attacks on the authorities. Defendant was prosecuted for violation of 49 U.S.C. § 46504 and found guilty after a jury trial. The district court

3

denied Defendant's request for reduced sentencing based on acceptance of responsibility. Defendant now appeals.

## II.

Defendant contends that the district court erred in finding that 49 U.S.C. § 46504 does not require specific intent, and in instructing the jury to that effect. Issues of statutory interpretation are reviewed de novo, *United States v. Jackson*, 248 F.3d 1028, 1029-30 (10th Cir. 2001), as are questions as to whether jury instructions correctly stated the law, *United States v. Sharp*, 749 F.3d 1267, 1280 (10th Cir. 2014).

In determining whether § 46504 is a general or specific intent statute, we look first to the plain language of the statute. *See, e.g., United States v. Saenz-Gomez*, 472 F.3d 791, 793-94 (10th Cir. 2007); *United States v. Morgan*, 922 F.2d 1495, 1496 (10th Cir. 1991). "If the statutory language is clear, our analysis ordinarily ends." *Jackson*, 248 F.3d at 1030. In relevant part, § 46504 provides:

> An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both.

49 U.S.C. § 46504. For general intent crimes, the act need only be done "voluntarily and intentionally, and not because of mistake or accident." *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995) (internal quotation marks omitted). In contrast, specific intent crimes require that a defendant act "not only with knowledge of what he is doing, but [also] with the objective of completing some unlawful act." *Id*. Here, nothing in § 46504 describes a specific *mens rea*. Where specific intent is not required, criminal statutes are

4

usually read to require "only that a defendant know the facts that make his conduct illegal." *Jackson*, 248 F.3d at 1030. It appears from the plain-language analysis that the district court correctly characterized § 46504 as a general intent statute.

Reading § 46504 as a general intent statute is consistent with previous interpretations of this law throughout our sister circuits and among our district courts. *See, e.g.*, *United States v. Persing*, 318 F.App'x 152, 154 (4th Cir. 2008) ("[Section] 46504 does not require specific intent."); *United States v. Grossman*, 131 F.3d 1449, 1452 (11th Cir. 1997) (Section 46504 "defines a general intent crime"); *United States v. Compton*, 5 F.3d 358, 360 (9th Cir. 1993) ("[Section 46504's predecessor statute[1]] does not require a specific intent."); *United States v. Hicks*, 980 F.2d 963, 974 (5th Cir. 1992) ("General intent is all that Congress required, as is evident from . . . Congress' failure to use a term such as 'willfully,' 'intentionally,' or 'knowingly.'"); *United States v. Meeker*, 527 F.2d 12, 14 (9th Cir. 1975); *United States v. Murphy*, 556 F. Supp. 2d 1232, 1235-36 (D. Colo. 2008). Moreover, a general intent interpretation of § 46504 best achieves the statute's legislative purpose of protecting air-travel safety. As the Ninth Circuit explained with respect to § 46504's predecessor statute:

> [T]he goal which Congress sought in this provision of the statute was to deter the commission of crimes which, if committed on the terrain below,

---

[1] Cases decided prior to 1994 address § 46504's predecessor statute, 49 U.S.C. § 1472(j), which prohibited assaulting, intimidating, or threatening any crew member or flight attendant "so as to interfere with the performance by such member or attendant of his duties or lessen the ability of such member or attendant to perform his duties." As the Eleventh Circuit noted, "[t]here is no indication of any congressional intent to change the meaning of the statutory language [from § 1472(j) to § 46504] as it relates to th[e] issue [of intent]." *Grossman*, 131 F.3d at 1451-52; *see also* H.R. Rep. No. 103-180, at 5 (1993) ("[T]his bill makes no substantive change in the law.").

5

> might be considered relatively minor, but when perpetrated on an aircraft in flight would endanger the lives of many. The primary danger to be averted is not the formation of a specific intent to interfere with aircraft operations but the criminal act of an assault [or] intimidation . . . upon airline personnel during flight. We therefore construe [§ 46504's predecessor statute] as a general intent crime, in harmony with the statutory purpose of safeguarding flight personnel from any statutorily described acts which would interfere with their efficient functioning.

*Meeker*, 527 F.2d at 14 (internal citations omitted).  Defendant argues, however, that this legislative history and the prior decisions interpreting § 46504 as a general intent statute are no longer relevant after *Elonis v. United States*, 135 S. Ct. 2001 (2015).  *Elonis* concerned a challenge to a jury instruction explaining the elements of 18 U.S.C. § 875(c), which prohibits transmitting in interstate commerce "any communication containing any threat . . . to injure the person of another." *Id.* at 2004.  Defendant reads *Elonis* as requiring specific intent before a defendant's words can be construed as a criminally actionable threat under § 46504.

In rejecting this exact argument, the Fifth Circuit explained, "[t]he mental state required [under § 875(c)] is not in the crime here." *United States v. Ziba*, 653 F.App'x 809, 810 (5th Cir. 2016).  We share this view.  To the extent that *Elonis* addresses criminal statutory interpretation beyond § 875(c), it merely reiterates existing precedent that "we read into the statute only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Elonis*, 135 S. Ct at 2010 (internal quotation marks omitted).  A general intent reading of § 46504, which still requires that a defendant's conduct be voluntary and deliberate, readily satisfies *Elonis'* *mens rea* standard.

6

Defendant attempts to distinguish his arguments from those considered in previous cases by focusing on the *mens rea* requirements of the assault or intimidation elements of § 46504. He asserts that previous cases that "focused solely on the interference with flight crew as a stand-alone element (*e.g., Persing*, *Grossman*) . . . do not answer the questions posed here." (Appellant's Br. at 20.) As the district court's jury instruction correctly explained, assault has two commonly recognized legal meanings: (1) "when a person intentionally threatens to hurt someone else" and has the apparent ability to do so, and (2) when a person commits a voluntary, deliberate act "which constitutes an offensive touching." (Appellant's App. Vol. IV at 455.) This second type of assault, or common law battery, does not require specific intent—only that the touching is "unwanted by the person touched and offensive to persons of ordinary sensibilities." *Id.*; *see, e.g*, *United States v. Mason*, 2017 WL 4479371, at *5-6 (10th Cir. Oct. 5, 2017) (holding that common law battery can be accomplished by the slightest offensive touching). Defendant acknowledges that "the [district] court was correct with respect to the 'interference with flight crew duties by assault' formulation of the offense," but then argues that the same statutory interpretation does not apply to intimidation because it is not a "stand-alone" offense. (Appellant's Br. at 18.)

Defendant's reading of the statute asks too much. Nothing in the plain language of the statute implies that an additional specific intent *mens rea* should be read into the "intimidation" element. Indeed, doing so would create a cumbersome interpretation of the statute in which a different *mens rea* applied to separate means of committing the same crime without any textual support that Congress intended such a division. We are

7

loath to read a *mens rea* requirement into the statute that could potentially undermine Congress's regulatory purpose of promoting airline safety. *See Hicks*, 980 F.2d at 971 ("Assuring the utmost in airline safety is the clear purpose behind [§ 46504's predecessor statute]."). Flight attendants and crew are trained on how to handle unpleasant passengers and deescalate tensions. If a passenger's behavior is intimidating enough to prevent an attendant or crew member from fully performing his or her duties as usual, this moves beyond normal aircraft protocol and undermines the safety of everyone on the aircraft. The offending passenger should not be able to avoid culpability for this dangerous behavior by simply arguing that he or she did not intend to intimidate the flight crew or attendants. Yet, a specific intent reading of the intimidation element would do just that. For the reasons discussed, we conclude that § 46504 is a general intent statute, as the district court's jury instructions properly explained.

Defendant also argues that § 46504 is unconstitutionally overbroad, both facially and as applied, because it punishes a substantial amount of protected free speech. Challenges to the constitutionality of a statute are reviewed de novo. *United States v. Brune*, 767 F.3d 1009, 1015 (10th Cir. 2014). The court begins its review with the presumption that the statute is constitutional. *Id.* at 1023.

Defendant asserts that § 46504 is facially overbroad because it focuses on speech or conduct that causes a person of ordinary sensibilities to fear bodily harm or alter his or her duties. Because conflicts frequently arise between airline customers and flight attendants, Defendant contends that this could give rise to arbitrary prosecution under the statute for nothing more than voicing a complaint, which is protected speech. With

8

respect to his as-applied challenge, Defendant maintains that all of the things he said during the flight (e.g., demanding more alcohol, calling the flight attendants foul names, threatening to "take down the airline" with negative publicity) were protected speech under the First Amendment. He acknowledges that his speech was offensive, but argues that it did not provoke immediate violence or communicate a serious threat of harm.

Section 46504 prohibits assault or intimidation of a flight crew member that interferes with that person's duties on an airplane during flight. In doing so, the statute sets out a content-neutral prohibition on conduct in a specific time, place, and manner. Content-neutral restrictions are constitutional if they are narrowly tailored to serve a significant governmental interest and leave open ample channels for communicating. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Here, the statute serves the significant governmental interest of prohibiting conduct that could otherwise present a significant threat to public safety for airline passengers and employees. *See Hicks*, 980 F.2d at 971-72; *Meeker*, 527 F.2d at 14. Moreover, nothing in the statute prohibits profanity or any other content, per se. *See Hicks*, 980 F.2d at 970 ("Rather than discriminating against protected profanity or vulgarity, the statute reasonably regulates the time, place, and manner of speech, irrespective of its particular content."). Section 46504 is not facially overbroad.

Likewise, there is no constitutional problem with the statute's application to Defendant's case. His conduct falls squarely in the type of behavior prohibited under the statute. Screaming in flight attendants' faces, shouting vile insults at them, and refusing to calm down all combined to intimidate the flight attendants to a degree that interfered

9

with the performance of their duties. Moreover, his repeated offensive touching of Attendant Ander caused her extreme discomfort and emotionally interfered with her ability to do her duties.

Defendant also argues that § 46504 is unconstitutionally vague because it does not adequately inform a passenger what constitutes criminal behavior. Challenges to a statute for being unconstitutionally vague are reviewed de novo. *United States v. Wenger*, 427 F.3d 840, 851 (10th Cir. 2005).

Defendant asserts that there is no clear line between impolite conduct and criminal conduct because the district court's reading of the statute turns on whether the flight crew member or attendant feels threatened and changes his or her behavior as a result. With respect to his own conduct, Mr. Lynch argues that "[i]n a case such as this, where a touching is slight," involving "merely touch[ing] a flight attendant, or even kiss[ing] her without her consent," "it is difficult for an ordinary person to tell whether he ha[d] just committed a felony." (Appellant's Br. at 38-40.) He further suggests that the only interference with the flight attendant duties this conduct may have caused was that "someone in row 16 has to wait five minutes before getting a soda refill." *Id.* Lastly, Mr. Lynch disputes the district court's assertion that it could only find the statute to be unconstitutionally vague if it were vague in all of its applications and that the vagueness challenge must be rejected if some improper conduct clearly fell within the scope of the statute, as was the case here. Mr. Lynch argues that this holding was incorrect under the Supreme Court's reasoning in *Johnson v. United States*, 135 S. Ct. 2551, 2560-61 (2015) (citations omitted).

10

In *Johnson*, the Supreme Court rejected as mere "tautology" the view that in order for a "statute to be vague, it [must be] vague in all its applications." *Id*. at 2561. Thus, we undertake a full vagueness analysis.

To withstand a vagueness challenge, a penal statute must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary or discriminatory enforcement." *United States v. Orona*, 724 F.3d 1297, 1310 (10th Cir. 2013) (internal quotation marks omitted). Section 46504 readily satisfies this standard. A person of ordinary intelligence could read it and know what type of conduct is prohibited (assault or intimidation of flight crew or attendants), where it is prohibited (on a plane, in-flight), and what result the statute is intended to prevent (reduction in aircraft safety). The statute also makes clear when this law would be enforced: if an in-flight act of assault or intimidation against flight crew members or attendants interferes with or lessens the ability of the crew to perform their duties.

Looking at the particular circumstances of this case, a person of ordinary intelligence could foresee that repeatedly touching a flight attendant on her lower back, hugging her and kissing her neck without her permission, screaming profanities in her face, threatening economic harm to the airline, and refusing to calm down are "actions which could inhibit the performance of an attendant's duties." *United States v. Tabacca*, 924 F.2d 906, 913 (9th Cir. 1991).

Finally, the statute is narrowly tailored to serve a substantial government interest and "does not cast a sweeping net at amorphous categories of speech" or reach a

11

substantial amount of constitutionally protected speech. *Hicks*, 980 F.2d at 972. For all these reasons, we conclude that § 46504 is not unconstitutionally vague.

Lastly, Defendant claims that the district court erred in not adjusting his sentencing level on the basis of acceptance of responsibility. Denials of a sentencing adjustment for acceptance of responsibility are reviewed for clear error and are entitled to great deference. *United States v. Sarracino*, 340 F.3d 1148, 1173-74 (10th Cir. 2003).

The Sentencing Guidelines allow for a two-level decrease in the offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Relying on *United States v. Gauvin*, Defendant maintains that he meets the acceptance-of-responsibility requirements because he did not contest the facts of his conviction, only the legal issue of whether these actions violated the statute. 173 F.3d 798, 806 (10th Cir. 1999). Defendant insists that the district court's error was not harmless because the bottom end of the lower sentencing level would have allowed for less prison time than he received.

After reviewing the district court's sentencing decision, we find no evidence of error. Defendant did not clearly demonstrate acceptance of responsibility because he disputed several factual contentions at trial—arguing, for instance, that his touching of Attendant Ander was meant only to get her attention and, later, as a conciliatory gesture. (Appellant's Br. at 8); (*contra* Appellant's App. Vol. IV at 181-82 (Attendant Ander testifying that Defendant's hand on her back "wasn't just like trying to get my attention.")); *see also* U.S.S.G. § 3E1.1(a) cmt. n.1(A) ("[A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has

12

acted in a manner inconsistent with acceptance of responsibility."). As the district court explained, "[Defendant] presented a defense that was not an acceptance of responsibility. It was, in essence, *This stuff is just [a] loud, drunk guy*, and *It is not intimidation, and it is not assault*. In other words, *He is not guilty . . . .*" (Appellant's App. Vol. IV at 486.)

The district court also correctly considered Defendant's pre-trial conduct, which included continued profanity, screaming, and aggression toward the arresting officers who met him at the gate once the plane landed. (Appellant's App. Vol. II at 43); *see also* U.S.S.G. § 3E1.1(a) cmt. n.2 ("[A] determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct."). This was not the behavior of a person who had accepted responsibility for his actions.

Finally, Defendant's reliance on *Gauvin* is unpersuasive. As discussed above, unlike the defendant in *Gauvin*, Defendant has not "admitted to all the conduct with which he was charged." 173 F.3d at 806. It should also be noted that in our decision to uphold the acceptance of responsibility reduction in *Gauvin*, "we merely accorded the district court the requisite deference" and "did not indicate that other sentencing courts would be obliged to reach the same conclusion on similar facts." *United States v. McGehee*, 672 F.3d 860, 877 (10th Cir. 2012). Thus, "in light of the operative deferential standard of review, *Gauvin*'s outcome does not dictate the appropriate resolution here . . . even if the facts were similar." *United States v. Herriman*, 739 F.3d 1250, 1257 (10th Cir. 2014) (emphasis omitted). Instead, we must look to the general legal principles animating Sentencing Guideline § 3E1.1, as the district court properly did. Ultimately, this is not the "rare situation[]" in which a defendant has "clearly demonstrate[d] an

acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." U.S.S.G. § 3E1.1(a) cmt. n.2. For this reason, we defer to the district court's sentencing decision.

## III.

For the foregoing reasons, we AFFIRM Defendant's conviction and sentence.

14