**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**December 3, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DIANA K. MOLYNEUX,

    Defendant - Appellant.

No. 24-4002
(D.C. No. 2:19-CR-00102-DAK-1)
(D. Utah)

_____

## ORDER AND JUDGMENT[*]

_____

Before **PHILLIPS**, **CARSON**, and **FEDERICO**, Circuit Judges.

_____

A jury convicted Diana Molyneux, a former United States Postal Service (USPS) employee, of two counts of delay or destruction of mail, in violation of 18 U.S.C. § 1703(a). On appeal, she claims the evidence was insufficient to support her conviction. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**Background**

At trial, numerous USPS employees and supervisors testified about the processes for handling different types of mail at the Processing and Distribution Center (PDC) where Ms. Molyneux worked as an express mail clerk. The witnesses explained that express mail clerks sort each piece of mail into separate bags marked for their final destinations. Clerks are trained not to delay or disrupt the mail flow either by resorting mail that has already been sorted or removing items from their sorting areas and bags. Mail that cannot be delivered is routed to the NIXIE room for further processing. NIXIE clerks determine whether undeliverable mail can be fixed or returned to the sender. First class and premium mail, including priority mail, that cannot be delivered or returned—dead mail—is sent to another facility for further processing. Undeliverable junk mail is placed in NIXIE unit recycling bins. Only NIXIE clerks are authorized to place mail in those bins.

In 2017, the USPS started receiving reports about missing priority mail that contained immigration documents sent by the United States Citizenship and Immigration Services (USCIS). At the same time, PDC employees started finding USCIS mail in areas of the facility where it did not belong, including in the NIXIE unit's dead mail tray. As a result, the USPS Office of the Inspector General (OIG) installed surveillance cameras at the facility. An OIG special agent testified that he observed Ms. Molyneux remove what appeared to be USCIS mail that had already been sorted from bags and cubbies and place them on her work counter during several of her shifts. She used various methods to avoid touching these items with

2

her bare hands, including using a folded piece of paper to take mail from cubbies or bags of sorted mail, using one piece of mail in her hand to lift another piece of mail out of a bag and slide the untouched item onto the counter, and using a gloved hand to remove an item from a bag of sorted mail. Each time, she deposited the items she had segregated into a pushcart which she moved out of view of the camera and did not bring them back. Some of those items corresponded to entries on an internal list of immigration mail that had been reported missing.

Based on these observations, OIG agents conducted physical and video surveillance of Ms. Molyneux during two shifts. The agents testified that before each shift, they photographed USCIS mailers and placed them alongside other mail in her work area. The agents showed the jury the photographs of the mailers and described what was happening as the jury watched the surveillance videos of the two shifts.

During the first of the two shifts, Ms. Molyneux slid one of the photographed mailers off the top of the other items and onto the counter without touching it with her hand. Later, she retrieved the mailer from the counter and walked toward the opposite side of the facility, out of view of the camera. When she came back into view, she no longer had the mailer. The agents alerted the shift manager, who found Ms. Molyneux in the locker room and told her to clock out and go home. She said she wanted to work overtime, but the manager did not authorize her to do so. The manager and agents found the missing USCIS mailer in an area near the locker room. That area was empty before they started searching for Ms. Molyneux.

3

About a month later, the agents surveilled the second shift. This time, they had photographed six USCIS mailers that they placed in Ms. Molyneux's work area. They watched her remove the previously sorted USCIS mailers the agents had photographed from the bags, place them at the bottom of a cart, and cover them with other mail. As she pushed the cart through the PDC, she removed the items she had placed on top of the USCIS mailers, leaving only the mailers in the cart, and stopped near the NIXIE room, which was empty. She then pushed the cart out of the agents' line of sight. When she came back into view, the cart was empty. The agents found the six USCIS mailers buried under a pile of junk mail in a NIXIE recycling bin. A USPS manager confirmed that the USCIS mailers Ms. Molyneux had removed from her work area during both shifts missed their dispatches and were delayed.

Testimony from USPS employees and supervisors established that postal employees are trained not to remove mail from the sorting area and place it elsewhere in the facility, and witnesses confirmed that doing so delays the mail. Witnesses also testified that Ms. Molyneux knew how to handle USCIS mailers and was aware that she was not authorized to delay them by removing them from the sorting area.

Based on this evidence, the jury found Ms. Molyneux guilty of two counts of unlawfully delaying or destroying mail, one count for her conduct during each shift.

**Discussion**

Ms. Molyneux has a heavy burden in raising a sufficiency challenge to her conviction because, although our standard of review is de novo, we view the evidence and inferences drawn from it in the light most favorable to the verdict, and

4

"[w]e will not weigh conflicting evidence or second-guess the fact-finding decisions of the jury," including its assessment of witness credibility. *United States v. Flechs*, 98 F.4th 1235, 1243 (10th Cir. 2024) (internal quotation marks omitted), *cert. denied*, No. 24-5131, 2024 WL 4427368 (U.S. Oct. 7, 2024). Under this deferential standard, the evidence "must be substantial and do more than raise a mere suspicion of guilt," but "it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *Id.* (internal quotation marks omitted). She can prevail only by convincing us that no rational trier of fact could have found the essential elements of the charged crimes beyond a reasonable doubt. *Id.*

As pertinent here, § 1703(a) prohibits USPS employees from "unlawfully" detaining or delaying items in the United States mail. 18 U.S.C. § 1703(a).[1] Thus, to establish that Ms. Molyneux violated § 1703(a), the government had to prove that she (1) was a USPS employee; (2) committed an act that caused the mail to be detained or delayed; and (3) acted unlawfully. *See United States v. Scott*, 993 F.2d 1520, 1521

---

[1] The statute provides:

> Whoever, being a Postal Service officer or employee, unlawfully secretes, destroys, detains, delays, or opens any letter, postal card, package, bag, or mail entrusted to him or which shall come into his possession, and which was intended to be conveyed by mail, or carried or delivered by any carrier or other employee of the Postal Service, or forwarded through or delivered from any post office or station thereof established by authority of the Postmaster General or the Postal Service, shall be fined under this title or imprisoned not more than five years, or both.

§ 1703(a).

(11th Cir. 1993) (per curiam). She claims the evidence was insufficient to prove the third element; she does not dispute that it was sufficient to prove the other elements.[2]

To resolve her claim, we must first determine the culpable mental state required for the crime of delay or destruction of mail. This is a question of statutory construction that we review de novo. *United States v. Serawop*, 410 F.3d 656, 660 (10th Cir. 2005).

The culpable mental state requirement, or scienter, is "the degree of knowledge necessary to make a person criminally responsible for his or her acts." *Ruan v. United States*, 597 U.S. 450, 458 (2022). Section 1703(a) does not define "unlawfully" and it does not contain a separate mental state requirement. Federal criminal statutes that are silent on the scienter requirement are presumed to have one unless it is clear that Congress intended otherwise. *See Rehaif v. United States*, 588 U.S. 225, 231-32 (2019) (internal quotation marks omitted). Typically, courts interpret such statutes as requiring "only that *mens rea* which is necessary to separate wrongful conduct from otherwise innocent conduct." *Carter v. United States*, 530 U.S. 255, 269 (2000) (internal quotation marks omitted). "Unsurprisingly, given the meaning of scienter, the *mens rea* [courts] read into such statutes is often that of knowledge or intent." *Ruan*, 597 U.S. 458; *see also United States v. Lynch*, 881 F.3d 812, 815 (10th Cir. 2018) ("Where specific intent is not required, criminal statutes

---

[2] Ms. Molyneux stipulated that she was a USPS employee. At trial she claimed the government failed to prove she was the employee responsible for mishandling immigration mail, but on appeal she does not challenge the sufficiency of the evidence on that basis.

are usually read to require only that a defendant know the facts that make his conduct illegal." (internal quotation marks omitted)).

Ms. Molyneux argues "unlawfully" as used in § 1703(a) means "for an unlawful purpose." Aplt. Br. at 32. She thus claims the government had to prove she was motivated by an improper purpose when she delayed or detained the USCIS mailers. Reading an unlawful purpose requirement into the statute would effectively make the crime a specific intent crime. *See United States v. Bailey*, 444 U.S. 394, 405 (1980) ("In a general sense, 'purpose' corresponds loosely with the common-law concept of specific intent, while 'knowledge' corresponds loosely with the concept of general intent.").

We reject her argument that the statute requires purposeful intent and conclude instead that it requires only the knowledge of unauthorized conduct. Nothing in the plain language of § 1703(a) suggests a specific intent *mens rea* should be read into the unlawfulness element. *See Lynch*, 881 F.3d at 815 (reading a criminal statute silent on the required mental state "as a general intent statute" requiring only that the act "be done voluntarily and intentionally, and not because of mistake or accident" (internal quotation marks omitted)); *see also United States v. Brownlee*, 937 F.2d 1248, 1253-54 (7th Cir. 1991) (recognizing that § 1703(a) establishes a general intent crime requiring proof that the defendant acted knowingly, meaning he "was aware of the nature of his conduct and did not act through ignorance, mistake or accident"). And requiring that the defendant act knowingly is sufficient to serve the purpose of a scienter requirement—distinguishing between the wrongful and innocent delay or

7

detention of mail. *See Carter*, 530 U.S. at 268-70 (rejecting contention that an intent to steal or purloin requirement was implicit in bank robbery statute and holding that "requiring proof of *general intent*—that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime" suffices to separate wrongful from innocent conduct); *Lynch*, 881 F.3d at 816 (rejecting argument that statute implicitly required specific intent, explaining that "[a] general intent reading . . . still requires that a defendant's conduct be voluntary and deliberate" and satisfies the purpose of a scienter requirement).

Ms. Molyneux attempts to avoid this conclusion by mischaracterizing our decision in *Williams v. United States*, 273 F.2d 469 (10th Cir. 1959) as holding that a conviction under § 1703(a) requires evidence of the defendant's unlawful purpose. The defendant in *Williams* challenged the sufficiency of the evidence to support his conviction for detaining and secreting the mail, arguing there was "no evidence of intent." *Id.* at 470. We affirmed, concluding that the evidence establishing that he put two decoy letters containing money in the glove compartment in his car instead of returning them to the post office with the other mail he had collected that day supported the trial court's finding that "the requisite intent or unlawful purpose was present." *Id.* Contrary to Ms. Molyneux's contention, our holding that the evidence showed he had an unlawful purpose—theft of the money—did not constitute a holding that an unlawful purpose is necessary to satisfy § 1703(a)'s unlawfulness element. As our use of the disjunctive "intent *or* unlawful purpose" indicates, we merely held that proving the defendant had an unlawful purpose was one way of

8

satisfying the mental state requirement. *Id.* (emphasis added). And because there was evidence of unlawful purpose, we did not need to decide whether the scienter requirement would have been satisfied by a less culpable mental state, such as knowledge that the defendant's conduct was unauthorized.[3]

Our interpretation of § 1703(a)'s mental state requirement as requiring only knowledge that the conduct was unauthorized is consistent with the parties' and the district court's understanding of that requirement at trial. The parties' stipulated elemental instruction indicated that for the jury to find Ms. Molyneux guilty, the government had to prove she "deliberately secreted, destroyed, detained, delayed, or opened mail in the care and custody of the Postal Service" and "knew she did not have authority to do this." R. vol I at 197. A separate stipulated instruction "[r]egarding element 3" also indicated that the government had to prove she "knew" her conduct was not authorized. *Id.* at 200. At no time did defense counsel ask the court to instruct the jury that the government had to prove Ms. Molyneux had an unlawful purpose. During the jury instruction conference, the court held that the parties' "stipulation on intent" was appropriate, R. vol. I at 630, and it gave the stipulated instructions, *id.* at 258, 261. These instructions are consistent with the

---

[3] For the most part, the out-of-circuit cases Ms. Molyneux cites to support her unlawful purpose argument also merely recognize that unlawful purpose is one way of proving the defendant acted with the necessary intent. In any event, none of those cases analyze § 1703(a)'s mental state requirement in depth, and to the extent they suggest the statute contains an implicit specific intent requirement, we are not bound by them. *See United States v. Carson*, 793 F.2d 1141, 1147 (10th Cir. 1986).

pattern jury instruction for § 1703(a). *See* Pattern Crim. Jury Instr. 96 (1988), Federal Jury Practice and Instructions.

Whether the defendant acted with the requisite intent is a question of fact for the jury to decide. *Williams*, 273 F.2d at 470. Ms. Molyneux's sufficiency argument assumes that the jury was required to find she acted with an unlawful purpose, and she does not expressly argue in the alternative that the evidence was insufficient to prove she knew her conduct was unauthorized. Even if her argument is sufficient to raise that issue, we have no trouble concluding the evidence of her deliberate efforts to segregate and discard USCIS mailers, including her efforts to avoid touching them with her hands, supports the jury's conclusion that she knew her conduct was unauthorized. *See United States v. Joseph,* 108 F.4th 1273, 1280 (10th Cir. 2024) ("[I]ntent may be inferred from evidence that the defendant attempted to conceal activity." (internal quotation marks omitted)); *United States v. Moore*, 555 F.2d 658, 660 (8th Cir. 1977) (finding evidence that defendant threw mail "into a trash receptacle" sufficient to establish the "elements of a § 1703(a) violation").

## Conclusion

We affirm the district court's judgment.

Entered for the Court

Gregory A. Phillips
Circuit Judge